Case Nos. 23-2966 and 23-2967
Consolidated with Case No. 23-2965

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

AUSTIN MICHAEL BEBER, JACKIE DAMON,
and CODY ROACH,

*Plaintiffs / Appellees*
vs.
NAVSAV HOLDINGS, LLC

*Defendant/Appellant.*

Appeal of Preliminary Injunctions from the United
States District Court for the District of Nebraska,
Honorable Brian C. Buescher
United States District Judge

## APPELLEES CODY ROACH'S AND JACKIE DAMON'S
## MOTION TO TAKE JUDICIAL NOTICE OF FILINGS

KOLEY JESSEN P.C., L.L.O.
Gregory C. Scaglione, #19368
Timothy M. Young, #26880
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124
(t) (402) 390-9500
(f) (402) 390-9005
Greg.Scaglione@koleyjessen.com
Tim.Young@koleyjessen.com

Attorneys for said Plaintiffs/Appellees

1

For purposes of their Petition for Panel Rehearing, Appellees Cody Roach and Jackie Damon (hereinafter "Appellees"), pursuant to Federal Rule of Evidence 201 and Federal Rule of Appellate Procedure 27, hereby request that this Court take judicial notice of certain Court filings which are attached hereto as Exhibits 1-16, namely:

***Austin Beber v. NavSav Holdings, LLC*, case no. 8:23-cv-323-BCB-MDN**

1. Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Filing 11), 8:23-cv- 00323-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on August 3, 2023;

2. Defendant's Brief in Support of its Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Filing 13), 8:23-cv- 00323-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on August 3, 2023;

3. Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Filing 35), 8:23-cv- 00323-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on September 26, 2023;

4. Defendant's Reply Brief in Support of its Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Filing 38), 8:23-cv- 00323-BCB-

MDN, which was filed in the United States District Court for the District of Nebraska on October 10, 2023;

5.      Defendant's Answer and Affirmative Defenses (Filing 47), 8:23-cv-00323-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on February 7, 2024;

6.      Order for Consolidation (Filing 53), 8:23-cv-00323-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on March 13, 2024;

***Cody Roach v. NavSav Holdings, LLC*, case no. 8:23-cv-325-BCB-MDN**

7.      Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Filing 18), 8:23-cv- 00325-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on August 4, 2023;

8.      Defendant's Brief in Support of its Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Filing 19), 8:23-cv- 00325-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on August 4, 2023;

9.      Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Filing 36), 8:23-cv- 00325-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on September 26, 2023;

10. Defendant's Reply Brief in Support of its Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Filing 39), 8:23-cv- 00325-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on October 10, 2023;

11. Defendant's Answer and Affirmative Defenses (Filing 49), 8:23-cv-00325-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on February 7, 2024;

***Jackie Damon v. NavSav Holdings, LLC*, case no. 8:23-cv-351-BCB-MDN**

12. Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Filing 10), 8:23-cv- 00351-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on August 16, 2023;

13. Defendant's Brief in Support of its Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Filing 11), 8:23-cv- 00351-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on August 16, 2023;

14. Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Filing 33), 8:23-cv- 00351-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on September 26, 2023;

15.     Defendant's Reply Brief in Support of its Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Filing 36), 8:23-cv- 00351-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on October 10, 2023; and

16.     Defendant's Answer and Affirmative Defenses (Filing 46), 8:23-cv-00351-BCB-MDN, which was filed in the United States District Court for the District of Nebraska on February 7, 2024.

"An appellate court may take judicial notice of a fact for the first time on appeal." *Gustafson v. Cornelius Co.,* 724 F.2d 75, 79 (8th Cir. 1983). Judicial notice is proper when relating to adjudicative facts, which are those not subject to reasonable dispute. Fed R. Ev. 201(b). A party is entitled to be heard on the propriety of taking judicial notice and the nature of the facts to be notice, and if the court takes judicial notice before notifying a party, the party is still entitled to be heard. Fed R. Ev. 201(e).

The foregoing documents are highly relevant to this proceeding. Appellees have filed a Petition for Panel Rehearing. In their Petition, Appellees have argued, *inter alia*, that this Court erred by in effect denying Roach and Damon the opportunity to submit arguments, authorities, and evidence showing why the first-filed rule was waived by NavSav and otherwise inapplicable. The foregoing documents reveal *in part* the basis of NavSav's waiver and the lack of

opportunity for Roach and Damon to make submissions showing why the first-filed rule was waived by NavSav and otherwise inapplicable. The foregoing documents also show why these issues regarding the first-filed rule should be remanded to the district court for further proceedings and resolution, and not resolved by this Court on this appellate record.

By taking judicial notice of these filings, the Court will be aided in determining the merit of the Appellees' Petition. Appellant will have an opportunity to respond to this Motion, via a response provided by Fed. R. App. P. 27(a)(3), should Appellant choose to file one, or through a hearing or other mechanism determined by this Court in its discretion.

WHEREFORE, Appellees Cody Roach and Jackie Damon move this Court to take judicial notice of the attached Court filings.

Dated: October 16, 2024.

Respectfully submitted,

*/s/ Gregory C. Scaglione*

Gregory C. Scaglione, #19368
Timothy M. Young, #26880
KOLEY JESSEN. P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124
(t) (402) 390-9500
(f) (402) 390-9005
Greg.Scaglione@koleyjessen.com
Tim.Young@koleyjessen.com

Attorneys for said
Plaintiffs/Appellees

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of October 2024, and

pursuant to Fed. R. App. P. 25(d), this Motion was filed with the Clerk of the

United States Court of Appeals for the Eighth Circuit using the Court's CM/ECF

system, which sent notification of such filing to all counsel of record:

*/s/ Gregory C. Scaglione*
Attorney for said Appellees

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 27, and contains 1,245 words, the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Rome font.

Dated: October 16, 2024.

*/s/ Gregory C. Scaglione*
Attorney for said Appellees

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AUSTIN MICHAEL BEBER<br> Plaintiff,<br><br>v.<br><br>NAVSAV HOLDINGS, LLC,<br> Defendant. | Case No. 8:23-cv-323<br><br>**DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |

COMES NOW NavSav Holdings, LLC, ("NavSav"), through its undersigned counsel, and under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404, moves this Court for an Order dismissing the Complaint filed by Plaintiff Austin Michael Beber ("Plaintiff") for improper venue, or, in the alternative, for an Order transferring this case to the United States District Court for the Eastern District of Texas, Beaumont Division.

The factual and legal bases for Defendant's Motion is detailed in NavSav's contemporaneously filed Brief in Support of this Motion. In summary, Plaintiff's suit centers on his former employment with NavSav and the enforceability of nonsolicitation covenants and other obligations he undertook during his employment. But Plaintiff's agreement with NavSav contains an exclusive forum selection clause placing venue for any employment-related dispute in the State of Texas, where NavSav is formed and where it maintains its principal place of business. Accordingly, there is a pending nearly-identical suit against Plaintiff in the state courts of Texas. Plaintiff has since removed that suit to the United States District Court for the Eastern District of Texas, Beaumont Division (the "Texas Action").

WHEREFORE, Defendant requests that the Court enter an Order: (1) dismissing Plaintiff's

1

Complaint and each cause of action asserted in it, without prejudice for refiling as a counterclaim in the Texas Action; or, in the alternative, for an order transferring this suit to the United States District Court for the Eastern District of Texas, Beaumont Division; (2) granting to NavSav its attorneys' fees, costs, and expenses incurred defending the Complaint; and (3) for any other relief that this Court deems just and equitable.

DATED: August 3, 2023.

NAVSAV HOLDINGS, LLC,
Defendant,

*/s/Quinn R. Eaton*
Kenneth M. Wentz, III # 23580
Quinn R. Eaton # 26318
JACKSON LEWIS P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska  68114
(402) 391-1991
Kenneth.Wentz@jacksonlewis.com
Quinn.Eaton@jacksonlewis.com

**ATTORNEYS FOR DEFENDANT**

4879-5869-7073, v. 1

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AUSTIN MICHAEL BEBER<br>    Plaintiff,<br><br>v.<br><br>NAVSAV HOLDINGS, LLC,<br>    Defendant. | Case No. 8:23-cv-323<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |

NavSav Holdings, LLC, ("NavSav"), through its undersigned counsel, submits this Brief in Support of Its Motion to Dismiss or In the Alternative, Motion to Transfer Venue.

## I.       INTRODUCTION

NavSav formerly employed Plaintiff Austin Michael Beber ("Plaintiff"), during which time Plaintiff entered into several agreements, including nonsolicitation covenants and other obligations. Plaintiff's agreement with NavSav contains an exclusive forum selection clause placing venue for any employment-related dispute in the State of Texas, where NavSav is formed and maintains its principal place of business.

NavSav filed a suit against Plaintiff in the state courts of Texas, nearly identical to the present suit. Plaintiff has since removed the Texas suit to the United States District Court for the Eastern District of Texas (the "Texas Action"). Plaintiff's suit before this Court is brought in an improper venue; the Texas Action is the proper venue based on Plaintiff's consent to exclusive jurisdiction and venue in Texas. This action must be dismissed or transferred to Texas.

## II.      FACTS

Nav Sav is in the business of selling insurance products throughout the United States with its principal office located in Jefferson County, Texas. (Complaint, ¶¶ 2-3, 5). Plaintiff accepted employment with Universal Group, Ltd. ("Universal") on October 31, 2016. *Id.* ¶ 10. NavSav

1

purchased the assets (i.e. insurance policies) of Universal Group, Ltd. out of Omaha, Nebraska on or about April 14, 2022, from Dan Headlee. *Id.* ¶ 21; (Ex. 1, Texas Action Compl., ¶ 10). As part of that purchase, Universal assigned to NavSav all right, title, and interest to non-competition, confidentiality, non-disclosure and other employee restrictive covenants held by Universal. *Id.* Plaintiff had executed an agreement which Universal assigned to NavSav. (Compl., Ex. A). Plaintiff's assigned agreement included a separate customer non-solicitation agreement. *Id.*

Plaintiff negotiated the terms of his employment with NavSav after the purchase to receive a higher commission structure. (Ex. 2, Decl. of Dan Headlee, ¶ 12). He also signed various employment-related documents for NavSav as part of the terms of his new employment. Plaintiff executed a Non-Competition, Non-Solicitation, Confidential, and Non-Disclosure Agreement (hereinafter "Nonsolicit Agreement") with NavSav on or about April 18, 2022. (Compl., ¶¶ 25-26). NavSav would not have retained Plaintiff's employment without execution of the Nonsolicit Agreement, nor would it have agreed to Plaintiff's higher commission structure. (Ex. 2, Decl. of Dan Headlee, ¶ 15). In the Nonsolicit Agreement, Plaintiff specifically and in writing, agreed not to nonsolicitation covenants and, among other things, agreed to the following:

> (1)     That he would be exposed to confidential information of NavSav which includes, but is not limited to, customer lists and customer information;
> (2)     That he agreed to keep this confidential information in the "strictest confidence" and would not disclose such information to anyone outside of NavSav;
> (3)     That he agreed to maintain the confidentiality and security of the confidential information even after his/her employment ended for any reason; and
> (4)     That there was no time restriction in the Non-Disclosure/Confidentiality provision of the Nonsolicit Agreement.

(Compl., Ex. B, §§ 55-57).

Plaintiff voluntarily resigned from NavSav on or about June 16, 2023. (Compl., ¶ 40). After Plaintiff submitted his two weeks' notice of resignation he hired legal counsel prior to his last day

2

of employment to attempt a "buy-out" of his book of business and an attempt to cancel the post-employment restrictive covenants of himself, former NavSav employee Cody Roach, and another employee, Jacqueline Damon. During that attempted negotiation, Plaintiff's representative made various admissions which include but are not limited to the following:

> (a)     Plaintiff asserted the covenant not to solicit customers of NavSav was not enforceable (i.e. he is free to solicit and will intentionally and anticipatorily breach the contract);
> (b)     Plaintiff asserted that "NavSav will be unable to keep the commercial lines customers after they learn that Cody Roach, Jackie Damon, and Austin Beber have resigned from NavSav. So, NavSav's additional ROI will quickly go to zero." This admission asserts that Roach and Plaintiff intended on soliciting and taking all of the commercial lines business of NavSav, as well as providing evidence of financial harm to NavSav who just purchased this book of business; and
> (c)     Plaintiff wanted to be free of a covenant not to solicit business and asserted NavSav's Agreement is unenforceable, but wanted NavSav to agree not to solicit the same customers if Plainitff was able to negotiate a buy-out.

(Ex. 2, Decl. of Daniel Headlee, ¶ 18).

NavSav filed a Petition against Plaintiff, Cody Roach, Jacqueline Damon, and Unico Group, Inc. (the new employer of Plaintiff, Roach, and Damon, and a competitor of NavSav) on June 26, 2023 in Texas. (See Exhibit 1). On July 6, 2023, the Texas court granted Plaintiff's Motion for Temporary Restraining Order, and issued a temporary restraining order against Plaintiff, Roach, and Damon. (See Exhibit 3). That restraining order, originally set to expire on July 17, 2023, was extended through August 1, 2023. NavSav's Petition, pursuant to Texas law on service of process of out-of-state defendants, was served on Texas's Secretary of State on July 7, 2023. (See Ex. 4).[1] In addition to effective service under Texas law, NavSav's counsel contemporaneously informed Plaintiff's counsel of all developments in Texas. (See Ex. 2, Decl.

---

[1] "Under Texas law, a non-resident of Texas may be served through the Texas Secretary of State." *Madden Bolt Corporation v. Glen Martin Engineering*, CIVIL ACTION No. H-08-3214, at *6 (S.D. Tex. Feb. 26, 2009) (citing Tex. Civ. Prac. Rem. Code § 17.026(a)). "Fed.R.Civ.P. 4(e) permits service of process on a non-resident defendant pursuant to state statute. " *Kervin v. Red River Ski Area, Inc.*, 711 F. Supp. 1383, 1386 (E.D. Tex. 1989).

3

of Dan Headlee, ¶ 27).

NavSav filed a Third Amended Petition on July 17, 2023, which was served on the Texas Secretary of State with process on July 18, 2023. (See Ex. 1). Unico Group, Inc. removed the Texas Action state case to the United States District Court for the Eastern District of Texas on July 30, 2023. (See Ex 5). Unico Group, Inc.'s Notice of Removal represented that Plaintiff, Roach, and Damon each consented to Unico Group, Inc.'s removal. *Id.* at p. 10, § V. As of July 24, 2023, there were conflicting restraining orders between the Texas and Nebraska courts. As demonstrated more fully in NavSav's resistance to Plaintiff's motion for preliminary injunction, Plaintiff violated the Texas court's order, whereas NavSav has been in compliance with all applicable orders.

### III.    LEGAL STANDARD

Once a defendant has challenged venue, the burden is on the plaintiff to establish that venue is proper. *Cohen v. Newsweek, Inc.*, 312 F.2d 76, 78 (8th Cir. 1963). The Court must presume that the parties' forum selection clause is valid, and should transfer to the agreed-upon venue. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991); *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 973 (8th Cir. 2012). Forum selection clauses should be given controlling weight and be enforced in all but "exceptional cases" or "extraordinary circumstances." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 59-61 (2013). The party opposing application of a forum selection clause bears the burden of proving it unenforceable. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013).

### IV.    ARGUMENT

#### A. Plaintiff's Suit is Advanced in an Improper Venue and Must be Dismissed

The court should dismiss this action based on improper venue. A Rule 12(b)(3) motion to dismiss is the means for seeking dismissal of an action when venue is improper, and the remedy

is dismissal. Fed. R. Civ. P. 12; *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013); *City of Neb. v. Baseline Eng'g Corp.*, 867 F.3d 875, 880 (8th Cir. 2017).

The Nonsolicitation Agreement signed by Plaintiff demands that "exclusive jurisdiction and venue" of disputes relating to the Agreement be heard in Jefferson County, Texas, that the parties waive any other venue to which they may be entitled, and that venue in Jefferson County, Texas is "mandatory[.]" (Compl., Ex. B, § 18) (emphasis in original). Thus, Plaintiff has waived any claim to rely on a basis of venue in 28 U.S.C. § 1391, and venue is improper before this Court.

**B.  If Plaintiff's Action is not Dismissed, it Should be Transferred to Texas Due to the Nonsolicit Agreement's Forum Selection Clause**

Under 28 U.S.C. § 1406(a), when venue is improper, the court must dismiss the action, or if it is in the interest of justice, transfer the action to a proper venue. 28 U.S.C. § 1406(a); *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). When the parties have agreed to a valid forum-selection clause, the court should transfer the case to the specified forum, absent extraordinary circumstances. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 61-64 (2013). Forum selection clauses are **presumed valid and enforceable** in determining the proper venue, including as to whether to transfer venue. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991); *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 753 (8th Cir. 1999). The parties agreed to a valid, applicable forum selection clause that requires litigation in the transferee district. This nullifies any deference to Plaintiff's chosen forum, and requires transfer. Forum selection clauses should be given controlling weight and be enforced in all but "exceptional cases" or "extraordinary circumstances." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 59-61 (2013).

It is Plaintiff's burden as the party opposing application of a forum selection clause to prove it is unenforceable. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). He has failed to meet this burden. The only objection Plaintiff raises in his Complaint to enforcement of the forum selection clause is a putative lack of consideration, but this assertion falls short. Plaintiff negotiated the terms of his employment with NavSav after its purchase of Universal (Plaintiff's former employer) to receive a higher commission structure. (Ex. 2, Decl. of Dan Headlee, ¶ 12). This alone is adequate consideration. Plaintiff makes note that he was presented with the Nonsolicitation Agreement "after [his] at-will employment had already begun[,]" (Compl., ¶ 26), in an apparent attempt to vitiate continued employment as consideration. Yet NavSav would not have retained Plaintiff's employment after its acquisition of Universal without execution of the Nonsolicit Agreement, nor would it have agreed to Plaintiff's higher commission structure. (Ex. 2, Decl. of Dan Headlee, ¶ 15).

NavSav expects that Plaintiff will seek to blur the question of forum selection with that of choice of law. It is clear from his pleadings that he maintains Nebraska law must apply to this dispute, but this is a separate question from venue. Nebraska and Texas follow the same choice-of-law analysis. *See, e.g., Erickson v. U-Haul Internat*, 278 Neb. 18, 25 (Neb. 2009) ("In choice-of-law determinations, we often seek guidance from the Restatement (Second) of Conflict of Laws."); *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) ("Since 1979, this Court has applied the Restatement's "most significant relationship" test to decide choice of law issues.") (citing the Restatement (Second) of Conflict of Laws).

Thus, if Plaintiff seeks to argue that the choice-of-law provision within the Nonsolicitation Agreement is invalid or that Nebraska law should apply despite the parties' agreement on Texas law, it may make that argument in Texas, under the same choice-of-laws framework that a

Nebraska court would apply. Any attempt to conflate these issues and deny venue on this basis is improper. The only applicable question here is whether Plaintiff has met his burden of demonstrating that the *exclusive Texas venue provision* is invalid. He has not. Thus, if this Court does not dismiss this action in favor of the pending Texas Action, it should transfer it to the United States District Court for the Eastern District of Texas, Beaumont Division

## V.  CONCLUSION

For the reasons set forth above, Defendant respectfully requests an Order from this Court (1) dismissing Plaintiff's Complaint and each cause of action asserted in it, without prejudice for refiling as a counterclaim in the Texas Action; or, in the alternative, for an order transferring this suit to the United States District Court for the Eastern District of Texas, Beaumont Division; (2) granting to NavSav its attorneys' fees, costs, and expenses incurred defending the Complaint; and (3) for any other relief that this Court deems just and equitable.

DATED: August 3, 2023.

NAVSAV HOLDINGS, LLC,
Defendant,

*/s/Quinn R. Eaton*
Kenneth M. Wentz, III # 23580
Quinn R. Eaton # 26318
JACKSON LEWIS P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska  68114
(402) 391-1991
Kenneth.Wentz@jacksonlewis.com
Quinn.Eaton@jacksonlewis.com

**ATTORNEYS FOR DEFENDANT**

7

## CERTIFICATE OF COMPLIANCE

Under NECivR 7.1(d)(3), I, Quinn R. Eaton, hereby certify that Defendant NavSav Holdings, LLC's Brief in Support of Motion to Dismiss, or in the Alternative, Motion to Transfer Venue, complies with the word count limitation provided under the Rule and further certify that the word count function was applied to include all text, including the captions, headings, footnotes, and quotations. This Brief was prepared using Microsoft Word Version 2302 and contains a combined 2,203 words.

*/s/ Quinn R. Eaton*
Quinn R. Eaton

4863-9841-5985, v. 2

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| AUSTIN M. BEBER, | CASE NO: 8:23-cv-00323 |
| Plaintiff, | |
| v. | **PLAINTIFF'S BRIEF IN OPPOSITION DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |
| NAVSAV HOLDINGS, LLC, | |
| Defendant. | |

Plaintiff Austin M. Beber, by and through his respective counsel, opposes Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue and requests that the Court deny the motion in its entirety.

## I.    INTRODUCTION

On August 22, 2023, the Court issued its memorandum and order granting a preliminary injunction in favor of Beber, finding that Nebraska law applied to the April Agreements and the Universal Agreements, finding that the restrictive covenants in those agreements are not enforceable, and enjoining NavSav from taking any further actions to enforce the noncompetition and non-solicitation covenants in those agreements and from making any further submissions, filings, or appearances in the case *NavSav Holdings, LLC v. Beber, Roach, Damon, and Unico Group, Inc.*, Case No. 1:23-cv-290 pending in the United States District Court for the Eastern District of Texas. Filing No. 27 (the "Texas Case"). This Court quoted the "exclusive" and "mandatory" jurisdiction and venue provisions in section 18 of the April Agreements, and this Court declined to apply those provisions as it asserted jurisdiction over the parties in this venue, and ordered no further submissions, filings or appearances in the Texas Case.

Despite this Court's unambiguous orders, NavSav made a subsequent filing in the Texas Case, though with the Texas Court's apparent blessing, but certainly not with the blessing of this Court. *See*, Filing Nos. 34-1 and 34-2. So, NavSav, standing in direct violation of this Court's orders, asks this Court to dismiss this case or to transfer it to the very court where the Court has ordered NavSav not to make any further submissions, filings or appearances. For these reasons alone, NavSav's motion should be denied.

Moreover, NavSav's motion to dismiss is procedurally improper and can be denied without addressing its merits. NavSav seeks to enforce a choice of forum provision in the April Agreements between NavSav and Beber in favor of a Texas forum. However, the case that NavSav cites in support of its position that it has properly brought a Rule 12(b)(3) motion states: "the Supreme Court has expressly held that parties may not enforce forum-selection clauses through Rule 12(b)(3) motions to dismiss." *City of Benkelman, Nebraska v. Baseline Eng'g Corp.*, 867 F.3d 875, 880 (8th Cir. 2017) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013)).

Consequently, the only motion that is procedurally compliant before the Court is the motion to transfer under 28 U.S.C. § 1404.[1] A motion to transfer requests transfer of a case to another ***federal*** district court, which NavSav claims should be the Texas Case Court. However, NavSav has taken the position that it would be improper for any federal court to exercise jurisdiction over the case. NavSav claims that the April Agreements require this suit to be maintained only in "District State Court located in Jefferson County, Texas". *See* Filing No. 34-2 at ¶¶ 42-46. Thus, NavSav contends transfer would be improper because the Court can transfer

---

[1] Plaintiff notes that NavSav's motion seeks relief under 28 U.S.C. 1404 so Plaintiff responds to the motion accordingly. However, NavSav's brief references relief under 28 U.S.C. 1406.

only to "any other district or division where it might have been brought or to any district or division to which all parties have consented." *See* 28 U.S.C. § 1404. NavSav cannot have it both ways.

NavSav's pending appeal with the Eighth Circuit Court of Appeals would significantly complicate any potential transfer of this case to another Court and the appeal alone makes this case very different from other situations in which a party seeks transfer based on a choice of forum clause. This Court has substantial knowledge concerning the underlying facts and has undertaken thoughtful analysis on the legal issues in play in this matter; the interests of efficiency and judicial economy weigh heavily toward denying dismissal and transfer.

Finally, the choice of forum clause is not enforceable against Beber, which eliminates NavSav's only arguments for dismissal or transfer. The April Agreements fail for lack of consideration, making the entire agreement including the choice of forum clause unenforceable. That issue was previously briefed and is incorporated here by reference. *See* Filing No. 16 at 9-12. Nebraska law – not Texas law – applies to the contract and the question of whether the choice of forum clause is enforceable. First, a trial in Texas would be substantially less convenient than in Omaha, Nebraska because the relevant persons are located here, including some of NavSav's potential witnesses and a substantial majority of the customers that have chosen to continue doing business with Beber instead of working with NavSav. There is no dispute that it would be much less convenient for the vast majority of witnesses in this case to travel the 900+ miles to Beaumont, Texas than to appear in Omaha for trial. Second, the April Agreements were obtained *after* Beber started his employment with NavSav, without consideration, and as NavSav has said – if Beber didn't sign the April Agreements, he would have been fired. Putting someone's livelihood on the line for signature of an agreement that was not negotiated and is completely one-

sided is a textbook example of an abuse of economic power. Finally, it would be unreasonable to enforce the agreement given the posture of this case, its significant progress to date, and the fact that it would likely cause piecemeal litigation on the relevant issues.

## II.   BACKGROUND

Beber recognizes that the Court is familiar with the background for this case as it has already received briefing, evidence, and argument on the background to this case and issues relating to choice of law in connection with the preliminary injunction that the Court issued on August 22, 2023. Beber refers the Court to the relevant facts and evidence filed in support of his motion for a preliminary injunction and to relevant evidence offered by Defendant as background.

## III.   ARGUMENT

### A. NavSav's Motion is Procedurally Improper

Black letter law from the United States Supreme Court dooms NavSav's Motion to Dismiss. In *Atl. Marine Constr. Co.*, the Supreme Court stated:

> Atlantic Marine contends that a party may enforce a forum-selection clause by seeking dismissal of the suit under § 1406(a) and Rule 12(b)(3). We disagree. Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause.

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). NavSav's brief citing this case, argues that venue is "improper." Filing No. 13 at 4-5. NavSav is wrong; "the Supreme Court has expressly held that parties may not enforce forum-selection clauses through Rule 12(b)(3) motions to dismiss." *City of Benkelman, Nebraska*, 867 F.3d at 880. To the extent that NavSav requests transfer under 28 U.S.C. § 1406(a) (*See* Filing No. 13 at 5-7),

4

NavSav's request to transfer is also improper as the Supreme Court has made it clear that a motion to transfer under 28 U.S.C. § 1406(a) is not the proper method to attempt to enforce a choice of forum clause.

### B. Nebraska law applies to the April Agreements.

"Simplicity argues for determining the validity and meaning of a forum selection clause," at least when "interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears." *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007). As a result, to determine whether the choice of forum provision in the April Agreements are valid, even if supported by consideration, the Court must determine what substantive law will apply to the April Agreements as a whole.

Nebraska law governs the April Agreements (despite the presence of a Texas choice-of-law clause) because Nebraska is the situs of the parties' relationship and the April Agreements were for personal services predominantly performed in Nebraska, with none performed or assigned to be performed in Texas. Because there is an actual conflict between application of Texas and Nebraska law to this dispute, the Court must determine which jurisdiction's law applies. The Court undertook this analysis in its order issuing a preliminary injunction in Beber's favor. Filing No. 25 at 18-24. The facts and law are unchanged since the Court issued its decision approximately one month ago, so the outcome also should be unchanged. Nebraska law applies to the April Agreements.

The conflict-of-law rules for the state in which this Court sits apply. *See, e.g., Inacom Corp. v. Sears, Roebuck & Co.,* 254 F.3d 683,687 (8th Cir. 2001). The Restatement (Second) of Conflict of Laws governs in Nebraska. *Am. Nat. Bank v. Medved,* 801 N.W.2d 230, 237

(Neb. 2011); *see also Inacom Corp.,* 254 F.3d at 687. In general, Nebraska courts honor choice-of-law clauses. *Medved,* 801 N.W.2d at 236. However, section 187 of the Restatement (Second) of Conflict of Laws, as quoted in Beber's Motion for a Temporary Restraining Order must be considered. Restatement (Second) of Conflict of Laws § 187 (1971); *see also Medved,* 801 N.W.2d at 237 (adopting section 187); *See DCS Sanitation Mgmt., Inc. v. Castillo,* 435 F.3d 892, 896 (8th Cir. 2006).

Section 187(1) does not apply because, as cited below, Nebraska Courts lack the power to reform unenforceable restrictive covenants. The exceptions under section 187(2) apply. *Castillo,* 435 F.3d at 896. Nebraska has a more substantial and materially greater interest in enforcing the agreement between Beber and NavSav. *See id.; see also Hill v. Antioch Co.,* No. 8:09CV275, 2009 WL 3838251, at *4 (D. Neb. Nov. 17, 2009). In the context of a restrictive covenant involving a contract for the rendition of services, there is a presumption that the state where "a major portion" of the services will be rendered, is the state with the most significant relationship. *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 709, 625 N.W.2d 197, 203 (2001) (citing Restatement (Second) of Conflict of Laws § 196). In this case, Nebraska has a greater interest in this NavSav Agreement. The only connection to Texas is that NavSav is incorporated there. In contrast, the connection to Nebraska is substantial and materially greater for the reasons and Nebraska connections stated above. Moreover, NavSav hired a Nebraska resident (Beber) to assist NavSav in selling insurance policies in Nebraska and Iowa, but not in Texas. NavSav never assigned Beber to an office in Texas or to territories in Texas. Throughout his employment with NavSav, Beber was never assigned to solicit customers located in Texas, and Beber never solicited or procured customers in Texas. Instead, the vast majority of

the policies Beber solicited or procured for NavSav were to policyholders located in Nebraska and Iowa. Paychecks received by Beber pursuant to his employment with NavSav deducted withholdings for Nebraska state income tax.

Nebraska and Texas law are vastly different as applied to post-employment restrictive covenants. Nebraska law provides that such a covenant "is valid only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and [had] personal contact." *Prof'l Bus. Servs. Co. v. Rosno,* 268 Neb. 99, 110-11, 680 N.W.2d 176, 185 (2004) (quotation omitted). Moreover, if such a covenant is overbroad, the covenant cannot be reformed or enforced to any extent. By contrast, Texas law does not require that "the former employee actually did business and [had] personal contact" with the former employer's clients or accounts. *See Molina v. Air Starter Components, Inc.*, No. 01-03-00175-CV, 2004 WL 1277491, at *9 (Tex. App. June 10, 2004); Tex. Bus. & Com. Code Ann. § 15.51(c), requiring that a Texas "court shall reform the covenant to the extent necessary . . . .").

The Eighth Circuit Court of Appeals has addressed this very issue, applying Nebraska law and declining to enforce a provision of an employment contract making Iowa law applicable to the agreement on the grounds that Iowa law would be contrary to fundamental public policy of Nebraska. *Rain and Hail Ins. Service, Inc. v. Casper*, 902 F.2d 699 (8th Cir. 1990). The Eighth Circuit Court of Appeals refused to enforce a choice of Iowa law contractual provision for an employee working in Nebraska, finding that

> [a]lthough Nebraska law generally allows parties to choose which jurisdiction's law will apply in a contract dispute (here Iowa law), the court nevertheless applied Nebraska law, reasoning that application of Iowa law would be contrary to a fundamental policy of Nebraska. Under Nebraska law, contracts in restraint of trade must be no greater than reasonably necessary to protect the employer in some legitimate interest.

7

*Rain and Hail Ins. Service, Inc. v. Casper*, 902 F.2d at 700-01 (citing *Polly v. Ray D. Hilderman Co.*, 225 Neb. 662, 407 N.W.2d 751, 754 (1987)).

Application of Nebraska law now is critical to prevent a Nebraska court from being forced to grant an injunction or enforce a judgment that does not adhere to Nebraska law and public policy. And this is not a close call. Nebraska law has the most significant relationship to the contract and the parties. As a result, Nebraska law applies to this case despite the presence of a Texas choice-of-law provision in the April Agreements.

### C. Under Nebraska Rev. Stat. § 25-415, the choice of forum provision in the April Agreements is unenforceable.

Under Nebraska law, which governs the April Agreements:

> If the parties have agreed in writing that an action on a controversy shall be brought only in another state and it is brought in a court of this state, the court will dismiss or stay the action, as appropriate, unless (1) the court is required by statute to entertain the action; (2) the plaintiff cannot secure effective relief in the other state, for reasons other than delay in bringing the action; (3) the other state would be a substantially less convenient place for the trial of the action than this state; (4) the agreement as to the place of the action was obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means; or (5) it would for some other reason be unfair or unreasonable to enforce the agreement.

NEB. REV. STAT. § 25-415.

While choice of forum clauses are enforceable generally, the circumstances before the Court do not warrant enforcement of the April Agreements or the choice of forum clause within the April Agreements. One of the few Nebraska cases to apply Neb. Rev. Stat. § 25-415 addressed the intersection of this statute and public policy considerations head on:

> Can we therefore say that a provision of a contract enacted pursuant to a statute adopted by the Legislature of the State of Nebraska is contrary to public policy? We believe that, under generally recognized rules applicable to cases of this nature, we cannot. What is public policy must be determined from a consideration of the federal and state Constitutions, the laws, the decisions of the courts, and the course of administration, and not by the varying opinions of laymen, lawyers, or judges.

*Haakinson & Beaty Co. v. Inland Ins. Co.*, 216 Neb. 426, 429, 344 N.W.2d 454, 457 (1984). In that case, the Nebraska Supreme Court declined to find a choice of forum clause unenforceable because the underlying contract (a bond) conformed to Nebraska statutes. The Nebraska Supreme Court also recognized: "By granting to the trial court the opportunity to refuse to dismiss the action where facts consistent with the limitations of § 25-415 exist, the courts are not denied their inherent authority to consider appropriate matters presented to them." *Id.*

This is one of those situations. The Court has already determined that Nebraska law applies to the April Agreements and provisions in the April Agreements violate Nebraska public policy. Filing No. 25 at 28. "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L. Ed. 2d 513 (1972). This is a case that involves people and conduct that are almost wholly in Nebraska and touches upon the State of Nebraska's clear position regarding what restrictions may be placed on employees working in Nebraska.

Moreover, the factors outlined in Neb. Rev. Stat. § 25-415 weigh in favor of the Court denying a motion to dismiss (or transfer). First, trial in Texas would be a substantially less convenient than in Nebraska. There is ample evidence in the record as to this point. Most of the customers allegedly being solicited who NavSav would need to call as witnesses are in Nebraska. Beber and Roach are in Nebraska and Damon is in neighboring Iowa. Even NavSav, who makes much of the fact that it is Texas-based, maintains a Nebraska office, alleges the action arises out of conduct in that office, and has submitted evidence through Dan Headlee, the former owner of Universal Group, who Beber believes to still be a Nebraska resident. It should go without saying that holding a trial more than 900 miles away from the home county for the vast majority of the

witnesses at trial is "substantially less convenient." Second, there was a clear abuse of economic power by NavSav in obtaining the April Agreements. NavSav's position in this case is that it would have fired Beber if he did not sign the April Agreements, pitting his job against a one-sided boilerplate document presented after he already started working for NavSav. *See* Dan Headlee Dec., Filing No. 8-1 ¶ 15. Third, it would be both unreasonable and unfair to enforce the choice of forum provision against Beber because the substance of the agreement is unenforceable and there has been substantial progress in this case (including a pending appeal).

### D.  Transfer of this case to Texas is not proper or appropriate.

In the alternative to its motion to dismiss, NavSav asks the Court to transfer this case to the United States District Court for the Eastern District of Texas, Beaumont Division. That request is based on 28 U.S.C. §1404 which, as NavSav notes, turns on the enforceability of the choice of forum clause in the April Agreements. NavSav's brief mistakenly argues for application of 28 U.S.C. §1406 and provides a rationale for the Court to transfer under 28 U.S.C. §1406. For the reasons stated above, the April Agreements are not enforceable under Nebraska law. Without the April Agreements, there is absolutely no basis to transfer cases brought in Nebraska, by Nebraska residents, against an entity licensed and registered to business in Nebraska, that concerns conduct in Nebraska, and the ability to engage in lawful competition in Nebraska. This is particularly true when NavSav asks for the Court to transfer the case to a Texas federal court even though NavSav is simultaneously arguing in another court that the Texas federal court does not have jurisdiction over the case. Filing No. 34-2 at ¶¶ 42-26. The Court should reject NavSav's attempt to argue opposite legal positions in two different courts and deny NavSav's request to transfer.

10

WHEREFORE, for the reasons stated above Plaintiff Austin M. Beber respectfully requests that the Court deny Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue in its entirety.

DATED: September 26, 2023.

AUSTIN MICHAEL BEBER,  Plaintiff,

By: */s/Andrew S. Tugan*

Gregory C. Scaglione, #19368
Andrew S. Tugan, #26917
Emily M. Coffey, #27308
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE  68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
Greg.Scaglione@koleyjessen.com
Andrew.Tugan@koleyjessen.com
Emily.Coffey@koleyjessen.com

*Attorneys for Plaintiff.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 26, 2023, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which sent notification of such filing to all CM/ECF participants.

*/s/Andrew S. Tugan*
Andrew S. Tugan

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| AUSTIN MICHAEL BEBER<br>    Plaintiff,<br><br>v.<br><br>NAVSAV HOLDINGS, LLC,<br>    Defendant. | Case No. 8:23-cv-323<br><br>**DEFENDANT'S REPLY BRIEF<br>IN SUPPORT OF ITS MOTION<br>TO DISMISS, OR IN THE<br>ALTERNATIVE, MOTION TO<br>TRANSFER VENUE** |

NavSav Holdings, LLC, ("NavSav"), through its undersigned counsel, submits this Reply Brief in Support of Its Motion to Dismiss or In the Alternative, Motion to Transfer Venue.

## I.      INTRODUCTION

Plaintiff's opposition to adhering to his unequivocal consent to jurisdiction in another venue relies entirely on convincing this Court to blur together two separate issues and make findings not currently at-issue. Plaintiff seeks to accelerate a final determination as to the substantive choice of law to apply to the noncompete/solicitation provisions of the April Agreements—while sidestepping the mandatory and exclusive jurisdiction provision that makes this venue improper, regardless of which substantive law applies. Plaintiff relies on *preliminary* determinations of this Court, focused on the merits of enforcement of the April Agreements' noncompete/solicitation provisions. These questions are premature and irrelevant to disposition of the solitary issue presented here: venue.

## IV.      ARGUMENT

### A.  Plaintiff Consented to Venue in Texas—Regardless of the Substantive Law

Plaintiff's argument dives immediately into the substantive merits of the case at large - arguing for application of Nebraska law as to noncompete/solicitation covenants. But venue is a matter of procedure, and, as such, governed by federal law. *Hanna v. Plumer*, 380 U.S. 460 (1965).

1

Plaintiff expands the relevant issue beyond its scope by attacking the contract as a whole rather than simply the forum selection provision. The Supreme Court has held that "forum-selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Plaintiff must present a "strong showing" that such a provision should be set aside. *Id.* at 15.

Plaintiff's attempt to make this showing is to return to substantive merits of the case and this Court's preliminary finding as to the enforceability of a noncompete provision in Nebraska. But this analysis sidesteps the relevant issue. In *Fitzgibbons v. Hill-Rom Co.*, a plaintiff similarly sought to conflate separate issues by arguing that because the defendant breached a contract, the forum-selection clause at issue was unenforceable. 2012 U.S. Dist. LEXIS 91289, *5 (D.S.D. June 28, 2012). Yet this Court's sister court noted that "forum-selection clauses are not substantive clauses where the enforceability is destroyed by a material breach. Additionally, it is counterintuitive to require the court to determine whether a contract has been breached and thus is unenforceable prior to determining which forum has jurisdiction over the claim." *Id.* at *6 (citation omitted). While the plaintiff's argument in *Fitzgibbons* was based on an allegedly excused performance due to another party's breach, this argument is analogous to Plaintiff's argument here that alleged substantive unenforceability of a separate provision in the April Agreements somehow renders the forum-selection provision unenforceable. The issues are separate. Plaintiff's attempts to blur them together should not be indulged.

The plaintiff in *Fitzgibbons* similarly attempted to argue that litigation in the forum to which he consented would be inconvenient. But the court held that "the financial inconvenience of litigating in accordance with the forum-selection clause does not bear on the validity or

2

enforceability of the clause itself." *Id.* at \*7. Plaintiff does the same here by attempting to weave the issue of choice-of-law for substantive enforcement of a noncompete into the issue of forum-selection by pointing to the alleged inconvenience of suit in Texas. Defendant's prior briefing addresses the factors that Plaintiff seeks to rely on regarding choice-of-law.[1] Even if considered in this context, those factors are essentially a wash and do not point so convincingly towards Nebraska as Plaintiff would seek to assert.

Once the issue to be decided on this Motion is properly contextualized, the only relevant arguments of Plaintiff consist of allegations that the forum-selection clause is invalid due to alleged inequal bargaining power or lack of consideration. But both such arguments fail. In the context of arbitration—which permits avoidance of arbitration if an arbitration provision is legally unenforceable, 9 U.S.C. § 2—courts routinely reject arguments like those made by Plaintiff. "Mere inequality in bargaining power" does not render a provision unconscionable. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) *see also Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 49 (Ind. App. 2005) ("A standardized contract is not unenforceable merely because of the unequal bargaining power of the parties—there must also be a showing that the contract is unconscionable."). Plaintiff does little else to meet the burden of proving unconscionability other than to generically assert the situation was unfair due to the inequality of bargaining power. But this scenario is true regarding virtually every contract an individual enters into with a business throughout their life, and courts routinely and soundly reject such arguments.

As to the alleged lack of consideration, Defendant's employment of Plaintiff was contingent on agreeing to the April Agreements. Even if not executed prior to beginning

---

[1] *See also Heartland Family Servs. v. Netsmart Techs., Inc.*, 961 F. Supp. 2d 964, 969-70 (D. Neb. 2013) (rejecting argument that state consented to—Illinois—was inconvenient due to 19 witnesses in Nebraska and Iowa, as parties knew at the time of contracting this was likely true, and such considerations did not mean Illinois courts were incapable of performing substantial justice).

3

employment, this expectation was present at the outset, and Plaintiff's employment would not have continued otherwise. *See, e.g.*, *Chilson v. Retalix USA, Inc.*, 8:07CV101, at \*5 (D. Neb. Oct. 2, 2007); *Medtronic, Inc. v. Gibbons*, 527 F. Supp. 1085, 1093 (D. Minn. 1981); *McNamara v. Yellow Transp*, 570 F.3d 950, 956 (8th Cir. 2009); *Central States Industrial Supply, Inc. v. McCullough*, No. C 02-0052-MWB, at \*37 (N.D. Iowa Sep. 3, 2003). Beyond simply employment and its continuation, Defendant also testified that Plaintiff was given access to confidential information—information he now uses against Defendant—that Defendant would not have provided absent Plaintiff's execution of the April Agreements. The essential elements of a contract were met. Plaintiff's argument otherwise is again simply an improper conflating of the substantive merits of the case—rather than the procedural issue as to whether Plaintiff consented to jurisdiction elsewhere. Plaintiff agreed not to bring suit in this Court; the matter must be dismissed or transferred.

### B. This Matter Should be Dismissed or Transferred to Texas

Plaintiff argues that Defendant cannot seek a transfer of this matter to the federal courts of Texas while simultaneously arguing that only Texas state court is proper. But this situation is of Plaintiff's own creation. Defendant originally filed suit in the proper state court of Texas, only for Plaintiff to remove it to federal court. Were the matter still in Texas state court, Defendant would simply seek a dismissal from this Court. However, given the circumstances created by Plaintiff, and acknowledging that courts prefer transfer over dismissal, *Heartland*, 961 F. Supp. 2d at 969, Defendant seeks transfer in the alternative.

Once this matter is at least moved back to the proper *state*, the courts there may determine whether state or federal court within that state is proper. This is simply yet another matter of Plaintiff conflating issues and seeking premature legal rulings. The current court hearing this

4

matter in Texas can decide whether state or federal court is proper. Whichever court in Texas retains jurisdiction can *then determine what law applies to this dispute*. As Defendant has noted repeatedly, Plaintiff can still argue for the application of Nebraska law, and Texas courts—applying the same choice-of-law framework as Nebraska—will have the opportunity to decide if Nebraska law should apply. Plaintiff does not lose that argument by a transfer to the proper court. Then, regardless of which law applies, Plaintiff can then still argue against the enforceability of the various substantive provisions at issue in the April Agreements.

All of these questions are issues for a later date.

At hand is whether Plaintiff consented to venue elsewhere: ***he did***. And that consent is enforceable. This matter must be dismissed or transferred.

## V.  CONCLUSION

For the reasons set forth above and in its original motion, Defendant respectfully requests an Order from this Court (1) dismissing Plaintiff's Complaint and each cause of action asserted in it, without prejudice for refiling as a counterclaim in the Texas Action; or, in the alternative, for an order transferring this suit to the United States District Court for the Eastern District of Texas, Beaumont Division; (2) granting to NavSav its attorneys' fees, costs, and expenses incurred defending the Complaint; and (3) for any other relief that this Court deems just and equitable.

DATED: October 10, 2023.

NAVSAV HOLDINGS, LLC,
Defendant,

*/s/Quinn R. Eaton*
Kenneth M. Wentz, III # 23580
Quinn R. Eaton # 26318
JACKSON LEWIS P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
(402) 391-1991
Kenneth.Wentz@jacksonlewis.com
Quinn.Eaton@jacksonlewis.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF COMPLIANCE

Under NECivR 7.1(d)(3), I, Quinn R. Eaton, hereby certify that Defendant NavSav Holdings, LLC's Reply Brief in Support of Motion to Dismiss, or in the Alternative, Motion to Transfer Venue, complies with the word count limitation provided under the Rule and further certify that the word count function was applied to include all text, including the captions, headings, footnotes, and quotations. This Brief was prepared using Microsoft Word Version 2273 and contains a combined 1,586 words.

*/s/ Quinn R. Eaton*
Quinn R. Eaton

4864-2070-4133, v. 2

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| AUSTIN MICHAEL BEBER<br>    Plaintiff,<br><br>v.<br><br>NAVSAV HOLDINGS, LLC,<br>    Defendant. | Case No. 8:23-cv-323<br><br>**DEFENDANT'S ANSWER AND<br>AFFIRMATIVE DEFENSES** |

NavSav Holdings, LLC, ("NavSav"), through its undersigned counsel, submits its Answer

and Affirmative Defenses in response to Plaintiff Austin Michael Beber's ("Beber") Complaint.

**PARTIES JURISDICTION AND VENUE**

1.      Defendant admits that Plaintiff is an individual residing in Omaha, Nebraska.

Defendant is without sufficient information to admit/deny the remaining allegations in paragraph

1 of the Complaint, and therefore denies the remaining allegations.

2.      Defendant admits that NavSav is a Texas Limited Liability company with its

principal place of business in Beaumont, Texas.

3.      Defendant admits the allegations in paragraph 3 of the Complaint.

4.      Defendant admits the allegations in paragraph 4 of the Complaint.

5.      Defendant lacks sufficient information to admit or deny licensing information

regarding Universal Group, Ltd., and therefore denies the same. Defendant admits the remaining

allegations in paragraph 5 of the Complaint.

6.      Defendant denies that jurisdiction is proper based on the terms of the agreements

signed by Plaintiff, and denies the allegations in paragraph 6 of the Complaint.

7.      Defendant denies that venue is proper based on the terms of the agreements signed

by Plaintiff, and denies the allegations in paragraph 7 of the Complaint.

1

8.      Defendant is without sufficient information to admit or deny the allegations in paragraph 8 of the Complaint, and therefore denies the same.

9.      Defendant is without sufficient information to admit or deny the allegations in paragraph 9 of the Complaint, and therefore denies the same.

10.     Defendant is without sufficient information to admit or deny the allegations in paragraph 10 of the Complaint, and therefore denies the same.

11.     Defendant is without sufficient information to admit or deny the allegations in paragraph 11 of the Complaint, and therefore denies the same.

12.     Defendant is without sufficient information to admit or deny the allegations in paragraph 12 of the Complaint and therefore denies the same.

13.     Defendant admits that the document attached as Exhibit A to the Complaint appears to be an accurate copy of an agreement signed by Plaintiff.

14.     Defendant is without sufficient information to admit or deny the allegations in paragraph 14 of the Complaint and therefore denies the same.

15.     Defendant is without sufficient information to admit or deny the allegations in paragraph 15 of the Complaint and therefore denies the same.

16.     Defendant is without sufficient information to admit or deny the allegations in paragraph 16 of the Complaint and therefore denies the same.

17.     Defendant is without sufficient information to admit or deny the allegations in paragraph 17 of the Complaint and therefore denies the same.

18.     Defendant admits that the document attached as Exhibit A contains the language appearing in paragraph 18 of the Complaint.

19.     Defendant is without sufficient information to admit or deny the remaining allegations in paragraph 19 of the Complaint and therefore denies the same.

20.     Defendant is without sufficient information to admit or deny the remaining allegations in paragraph 20 of the Complaint and therefore denies the same.

21.     Paragraph 21 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 21 of the Complaint.

22.     Defendant denies the allegations in paragraph 22 of the Complaint.

23.     Paragraph 23 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 23 of the Complaint.

24.     Defendant admits the allegations in paragraph 24 of the Complaint.

25.     Defendant admits that the document attached as Exhibit A to the Complaint appears to be an accurate copy of an agreement signed by Plaintiff. Defendant denies the remaining allegations in paragraph 25 of the Complaint.

26.     Defendant admits that Beber signed employment related agreements. The remainder of paragraph 26 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 26 of the Complaint.

27.     Defendant admits the allegations in paragraph 27 of the Complaint.

28.     Defendant is without sufficient information to admit or deny whether Beber had counsel when he signed the NavSav Agreement and therefore denies the same. Defendant denies the remaining allegations in paragraph 28.

29. Defendant denies the allegations in paragraph 29 of the Complaint.

30. Paragraph 30 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 30 of the Complaint.

31. Defendant admits the allegations in paragraph 31 of the Complaint.

32. Paragraph 32 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 32 of the Complaint.

33. Defendant states that the referenced document speaks for itself.

34. Defendant states that the referenced document speaks for itself.

35. Defendant states that the referenced document speaks for itself.

36. Defendant admits that Beber advised NavSav clients regarding various items including policy coverage and loss mitigation. Defendant denies the remaining allegation in paragraph 36 of the Complaint.

37. Defendant admits Beber worked out of NavSav's Omaha, Nebraska office. Defendant denies the remaining allegations in paragraph 37 of the Complaint.

38. Defendant admits Beber solicited and procured NavSav policyholders in Nebraska and Iowa. Defendant denies the remaining allegations in paragraph 38 of the Complaint.

39. Defendant admits the allegations in paragraph 39 of the Complaint.

40. Defendant admits the allegations in paragraph 40 of the Complaint.

41. Paragraph 41 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 41 of the Complaint.

42.     Defendant admits the allegations in paragraph 42 of the Complaint.

43.     Defendant admits Brent Walters spoke with Beber following Beber's resignation notice. Defendant denies the remaining allegations in paragraph 43 of the Complaint.

44.     Paragraph 44 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 44 of the Complaint.

45.     Defendant is without sufficient information to admit or deny the allegations in paragraph 45 and therefore denies the same.

46.     Paragraph 46 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 46 of the Complaint.

47.     Paragraph 47 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 47 of the Complaint.

48.     Defendant is without sufficient information to admit or deny the allegations in paragraph 48 of the Complaint and therefore denies the same.

49.     Defendant is without sufficient information to admit or deny the allegations in paragraph 49 of the Complaint and therefore denies the same.

50.     Defendant is without sufficient information to admit or deny the allegations in paragraph 50 of the Complaint and therefore denies the same.

51.     Paragraph 51 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 51 of the Complaint.

52.     Defendant admits the allegations in paragraph 52 of the Complaint.

53.     Defendant denies the allegations in paragraph 53 of the Complaint.

54.     Defendant admits the allegations in paragraph 54 of the Complaint.

55.     Defendant denies the allegations in paragraph 55 of the Complaint.

56.     Defendant admits it offered to pay Beber's accrued but unused PTO based on an annual salary of $45,000. Defendant denies the remaining allegations in paragraph 56 of the Complaint.

57.     Paragraph 57 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 57 of the Complaint.

## FIRST CLAIM FOR RELIEF
### DECLARATORY JUDGMENT: PARTS OF THE NAVSAV AGREEMENT ARE INVALID AND UNENFORCEABLE, INCLUDING WITHOUT LIMITATION THE RESTRICTIVE COVENANTS

58.     Defendant incorporates its responses to the previous paragraphs as if fully set forth herein.

59.     Defendant avers that the Statute speaks for itself and admits that paragraph 59 includes an accurate excerpt from part of the cited statute.

60.     Defendant avers that the Statute speaks for itself and admits that paragraph 60 includes an accurate excerpt from part of the cited statute.

61.     The allegations in paragraph 61 of the Complaint contain legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 61 of the Complaint.

6

62.     Defendant avers that the Statute speaks for itself and admits that paragraph 62 includes an accurate excerpt.

63.     The allegations in paragraph 63 of the Complaint contain legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 63 of the Complaint.

64.     Paragraph 64 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 64 of the Complaint.

65.     Paragraph 65 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 65 of the Complaint.

66.     Paragraph 66 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 66 of the Complaint.

67.     Paragraph 67 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 67 of the Complaint.

68.     Paragraph 68 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 68 of the Complaint.

69.     Paragraph 69, including subparts (a) and (b) of the Complaint contain legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 69, including subparts (a) and (b) of the Complaint.

70.     Defendant admits Plaintiff is a resident of Omaha, Nebraska. Defendant is without sufficient information to admit or deny the remaining allegations in paragraph 70 and therefore denies the same.

71.     Defendant admits that it has authorized agents in Nebraska. The remainder of paragraph 71 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 71 of the Complaint.

72.     Paragraph 72 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 72 of the Complaint.

73.      Paragraph 73 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 73 of the Complaint.

74.     Paragraph 74 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 74 of the Complaint.

75.     Defendant admits it has authorized agents in Nebraska. The remainder of paragraph 75 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 75 of the Complaint.

76.     Defendant denies that this Court has jurisdiction over the parties based on the agreements signed by Plaintiff. The remainder of paragraph 76 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 76 of the Complaint.

77. Defendant admits that it conducts business in Nebraska and it employed Beber. The remainder of paragraph 77 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 77 of the Complaint.

78. Paragraph 78 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 78 of the Complaint.

79. Paragraph 79 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 79 of the Complaint.

80. The quoted section of Defendant's agreement with Plaintiff speaks for itself. The remainder of paragraph 80 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 80 of the Complaint.

81. Paragraph 81 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 81 of the Complaint.

82. Defendant denies that Beber is entitled to the relief requested in paragraph 82 of the Complaint.  The remainder of paragraph 82 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 82 of the Complaint.

83. Defendant avers that the Statute speaks for itself and admits that paragraph 83 includes an accurate excerpt from part of the cited statute.

84.     Defendant denies the allegations in paragraph 84 of the Complaint.

85.     Paragraph 85 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 85 of the Complaint.

86.     Paragraph 86 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 86 of the Complaint.

87.     Paragraph 87 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 87 of the Complaint.

88.     Paragraph 88, including 88(a) and 88(b), of the Complaint contain legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 88 of the Complaint including subparts 88(a) and 88(b).

89.     Paragraph 89 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 89 of the Complaint.

90.     Paragraph 90 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 90 of the Complaint.

91.     Paragraph 91 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 91 of the Complaint.

92.     Paragraph 92 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 92 of the Complaint.

93.     Paragraph 93 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 93 of the Complaint.

94.      Paragraph 94 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 94 of the Complaint.

95.     Defendant admits that the referenced agreement is a contract. The remainder of Paragraph 95 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the remaining allegations in paragraph 95 of the Complaint.

96.     Paragraph 96 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 96 of the Complaint.

97.     Paragraph 97 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 97 of the Complaint.

98.     Paragraph 98 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 98 of the Complaint.

99.     Paragraph 99 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 99 of the Complaint.

100.    Paragraph 100, including 100(a) and 100(b) of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 100, including 100(a) and 100(b) of the Complaint. Defendant denies that Plaintiff is entitled to the relief set forth in the unnumbered paragraph following paragraph 100, or any relief whatsoever.

### SECOND CLAIM FOR RELIEF
### TEMPORARY AND PERMANENT INJUNCTIONS

101.    Defendant  incorporates its responses  in the foregoing paragraphs as if fully set forth herein.

102.    Paragraph 102 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 102 of the Complaint.

103.    Paragraph 103 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 103 of the Complaint. Defendant denies that Plaintiff is entitled to the relief set forth in the unnumbered paragraph following paragraph 103, or any relief whatsoever.

### THIRD CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS OR EXPECTANCIES

104.    Defendant incorporates its responses in the foregoing paragraphs as if fully set forth herein.

105.    Paragraph 105 of the Complaint contains legal conclusions to which no response is

12

required or made. To the extent a response is required, Defendant denies the allegations in paragraph 105 of the Complaint.

106.    Defendant denies the allegations in paragraph 106 of the Complaint.

107.    Defendant denies the allegations in paragraph 107 of the Complaint.

108.    Paragraph 108 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 108 of the Complaint.

109.    Paragraph 109 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 109 of the Complaint.

110.    Paragraph 110 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 110 of the Complaint.

111.    Paragraph 111 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 111 of the Complaint. Defendant denies that Plaintiff is entitled to the relief set forth in the unnumbered paragraph following paragraph 111, or any relief whatsoever.

**FOURTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE NEBRASKA WAGE PAYMENT AND
COLLECTION ACT**

112.    Defendant incorporates its responses in the foregoing paragraphs as if fully set forth herein**.**

113.    Defendant denies the allegations in paragraph 113 of the Complaint.

114.    Defendant denies the allegations in paragraph 114 of the Complaint.

13

115.	Defendant admits the allegations in paragraph 115 of the Complaint.

116.	Defendant denies the allegations in paragraph 116 of the Complaint.

117.	Defendant admits it offered to pay Beber's accrued but unused PTO based on an annual salary of $45,000. Defendant denies the remaining allegations in paragraph 117 of the Complaint.

118.	Defendant denies the allegations in paragraph 118 of the Complaint.

119.	Paragraph 119 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 119 of the Complaint.

120.	Defendant avers that the Statute speaks for itself and admits that paragraph 120 includes an accurate excerpt from part of the cited statute.

121.	Paragraph 121 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 121 of the Complaint.

122.	Paragraph 122 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 122 of the Complaint.

123.	Paragraph 123 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 123 of the Complaint.

124.	Paragraph 124 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 124 of the Complaint.

14

125.    Paragraph 125 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 125 of the Complaint. Defendant denies that Plaintiff is entitled to the relief set forth in the unnumbered paragraph following paragraph 125, or any relief whatsoever.

<b><u>AFFIRMATIVE DEFENSES</u></b>

1.    The Complaint fails to state a claim upon which relief can be granted and fails to alleged sufficient facts necessary to state a claim.

2.    Plaintiff seeks an advisory opinion which is improper for a declaratory judgment action.

3.    Plaintiff is barred from seeking the requested relief under the doctrine of unclean hands.

4.    Plaintiff's own acts or omissions caused or contributed to any damages he claims.

5.    Plaintiff has failed to mitigate his damages, if any.

6.    Defendant intends to rely on any other defenses that may become available, appear during, or are the result of further action in this matter, and hereby reserves its right to amend this Answer to assert such defenses.

WHEREFORE, Defendant respectfully requests that the Court: (1) enter judgment in its favor; (2) dismiss the Complaint with prejudice and on the merits; (3) enter an order granting to the Defendant its attorneys' fees, costs, and expenses incurred defending this action, as well as other relief deemed just and equitable under the circumstances.

15

DATED:  February 7, 2024.

NAVSAV HOLDINGS, LLC,
Defendant,

*/s/Kenneth M. Wentz III*
Kenneth M. Wentz III # 23580
Quinn R. Eaton # 26318
Ross M. Serena # 27483
JACKSON LEWIS P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska  68114
(402) 391-1991
Kenneth.Wentz@jacksonlewis.com
Quinn.Eaton@jacksonlewis.com
Ross.Serena@jacksonlewis.com
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which sent notification to all parties of record.

*/s/Kenneth M. Wentz III*

4857-1800-0545, v. 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AUSTIN MICHAEL BEBER,<br><br>      **Plaintiff,**<br><br>vs.<br><br>**NAVSAV HOLDINGS, LLC,**<br><br>      **Defendant.** | **8:23CV323**<br><br>**ORDER FOR CONSOLIDATION** |
| **CODY ROACH,**<br><br>      **Plaintiff,**<br><br>vs.<br><br>**NAVSAV HOLDINGS, LLC,**<br><br>      **Defendant.** | **8:23CV325**<br><br>**ORDER FOR CONSOLIDATION** |
| **JACKIE DAMON,**<br><br>      **Plaintiff,**<br><br>vs.<br><br>**NAVSAV HOLDINGS, LLC,**<br><br>      **Defendant.** | **8:23CV351**<br><br>**ORDER FOR CONSOLIDATION** |

After review of the pleadings in the above-captioned cases, and with the parties' consent, the Court finds that consolidation of these cases for purposes of discovery pursuant to Fed. R. Civ. P. 42(a) is warranted. Accordingly,

**IT IS ORDERED**:

1. The above-captioned cases are consolidated for purposes of discovery. The Court designates Case No. 8:23cv323 as the "Lead Case" and Case No. 8:23cv325 and 8:23cv351 as the "Member Cases."

2. The Court's CM/ECF System has the capacity for "spreading" text among the consolidated cases. If properly docketed, the documents filed in the Lead Case will

automatically be filed in the Member Cases. The parties are instructed to file documents in the Lead Case and to select the option "yes" in response to the System's question whether to spread the text.

3. The parties may not use the spread text feature to file complaints, amended complaints, and answers; to pay filing fees electronically using pay.gov; to file items related to service of process; or to file notices of appeal. Attempting to do so will cause a system error, and therefore these documents must be separately filed in each of the lead and member cases. When filing such documents, counsel may either file the document separately in each case, or file the document in the Lead Case and ask the court to then file it in all member cases.

4. If a party believes an item in addition to those described in paragraph 3 should not be filed in all of the consolidated cases, the party must move for permission to file the item in the Member Cases. The motion must be filed in all of the consolidated cases using the spread text feature.

Dated this 13th day of March, 2024.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CODY ROACH<br>    Plaintiff,<br><br>v.<br><br>NAVSAV HOLDINGS, LLC,<br>    Defendant. | Case No. 8:23-cv-325<br><br>**DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |

COMES NOW NavSav Holdings, LLC, ("NavSav"), through its undersigned counsel, and under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404, moves this Court for an Order dismissing the Complaint filed by Plaintiff Cody Roach ("Plaintiff") for improper venue, or, in the alternative, for an Order transferring this case to the United States District Court for the Eastern District of Texas, Beaumont Division.

The factual and legal bases for NavSav's Motion are detailed in its contemporaneously filed Brief in Support of this Motion. In summary, Plaintiff's suit centers on his former employment with NavSav and the enforceability of nonsolicitation covenants and other obligations he undertook during his employment. But Plaintiff's NavSav agreement contains an exclusive forum selection clause placing venue for any employment-related dispute in the State of Texas, where NavSav is headquartered and where it maintains its principal place of business. Accordingly, there is a pending nearly identical suit which NavSav filed against Plaintiff in the state courts of Texas prior to Plaintiff's filing. That suit is now removed to the United States District Court for the Eastern District of Texas, Beaumont Division (the "Texas Action").

WHEREFORE, Defendant requests that the Court enter an Order: (1) dismissing Plaintiff's

1

Complaint and each cause of action asserted in it, without prejudice, for refiling as a counterclaim in the first-filed Texas Action; or, in the alternative, for an order transferring this suit to the United States District Court for the Eastern District of Texas, Beaumont Division; (2) granting to NavSav its attorneys' fees, costs, and expenses incurred defending the Complaint; and (3) for any other relief that this Court deems just and equitable.

DATED: August 4, 2023.

NAVSAV HOLDINGS, LLC,
Defendant,

*/s/Quinn R. Eaton*
Kenneth M. Wentz, III # 23580
Quinn R. Eaton # 26318
JACKSON LEWIS P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
(402) 391-1991
Kenneth.Wentz@jacksonlewis.com
Quinn.Eaton@jacksonlewis.com

**ATTORNEYS FOR DEFENDANT**

4894-6001-7013, v. 1

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CODY ROACH<br>    Plaintiff,<br><br>v.<br><br>NAVSAV HOLDINGS, LLC,<br>    Defendant. | Case No. 8:23-cv-325<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |

NavSav Holdings, LLC, ("NavSav"), through its undersigned counsel, submits this Brief in Support of Its Motion to Dismiss or In the Alternative, Motion to Transfer Venue.

## I.     INTRODUCTION

NavSav formerly employed Plaintiff Cody Roach ("Plaintiff"). Plaintiff signed several agreements pertaining to his post-employment conduct, including nonsolicitation covenants and other obligations. The agreement which Plaintiff places at issue here contains an exclusive forum selection clause placing venue for any employment-related dispute in the State of Texas, where NavSav is formed and maintains its principal place of business.

NavSav filed a suit against Plaintiff in the state courts of Texas nearly identical to the present suit. That suit is now removed the Texas suit to the United States District Court for the Eastern District of Texas (the "Texas Action"). After NavSav sued Plaintiff in Texas, Plaintiff then brought this suit in an improper venue – Nebraska state court; the Texas Action is the proper venue based on Plaintiff's consent to exclusive jurisdiction and venue in Texas. This action must be dismissed or transferred to Texas.

## II.     FACTS

Nav Sav is in the business of selling insurance products throughout the United States with its principal office located in Jefferson County, Texas. (Complaint, ¶¶ 2-3, 5). Plaintiff accepted

1

employment with Universal Group, Ltd. out of Omaha, Nebraska ("Universal") on November 17, 2020. *Id.* ¶ 8. NavSav purchased Universal Group, Ltd. on or about April 12, 2022, from Dan Headlee. *Id.* ¶ 13; (Ex. 1, Texas Action Compl., ¶ 10). As part of that purchase, Universal assigned to NavSav all right, title, and interest to non-competition, confidentiality, non-disclosure and other employee restrictive covenants held by Universal. *Id.*

Plaintiff negotiated the terms of his employment with NavSav after the purchase to receive a higher commission structure. (Ex. 2, Decl. of Dan Headlee, ¶ 12). He also signed various employment-related documents for NavSav as part of the terms of his new employment. Plaintiff executed a Non-Competition, Non-Solicitation, Confidential, and Non-Disclosure Agreement (hereinafter "Nonsolicit Agreement") with NavSav in April 2022. (Compl., ¶¶ 17-18). NavSav would not have retained Plaintiff's employment without execution of the Nonsolicit Agreement, nor would it have agreed to Plaintiff's higher commission structure. (Ex. 2, Decl. of Dan Headlee, ¶ 15). In the Nonsolicit Agreement, Plaintiff specifically and in writing, agreed not to nonsolicitation covenants and, among other things, agreed to the following:

(1) That he would be exposed to confidential information of NavSav which includes, but is not limited to, customer lists and customer information;
(2) That he agreed to keep this confidential information in the "strictest confidence" and would not disclose such information to anyone outside of NavSav;
(3) That he agreed to maintain the confidentiality and security of the confidential information even after his/her employment ended for any reason; and
(4) That there was no time restriction in the Non-Disclosure/Confidentiality provision of the Nonsolicit Agreement.

(Amd. Compl., Ex. A, §§ 5-7).

Plaintiff submitted his resignation from NavSav on or about June 1, 2023. (Compl., ¶ 32). After Plaintiff submitted his two weeks' notice of resignation, another former NavSav employer, Austin Beber ("Beber") hired legal counsel prior to his last day of employment to attempt a "buy-

out" of his book of business and an attempt to cancel the post-employment restrictive covenants of himself, Plaintiff, and another former NavSav employee, Jacqueline Damon. During that attempted negotiation, Beber's representative made various admissions which include but are not limited to the following:

> (a) Beber asserted the covenant not to solicit customers of NavSav was not enforceable (i.e. he is free to solicit and will intentionally and anticipatorily breach the contract);
> (b) Beber asserted that "NavSav will be unable to keep the commercial lines customers after they learn that Cody Roach, Jackie Damon, and Austin Beber have resigned from NavSav. So, NavSav's additional ROI will quickly go to zero." This admission asserts that Roach and Plaintiff intended on soliciting and taking all of the commercial lines business of NavSav, as well as providing evidence of financial harm to NavSav who just purchased this book of business; and
> (c) Beber wanted to be free of a covenant not to solicit business and asserted NavSav's Agreement is unenforceable, but wanted NavSav to agree not to solicit the same customers if Beber was able to negotiate a buy-out.

(Ex. 2, Decl. of Daniel Headlee, ¶ 18). Both Plaintiff and Beber announced their new employment with Unico Group on social media and noted they would be concentrating on "building tailored insurance solutions within the auto dealing, towing and auto, and auto after-market industry across Nebraska." *Id.* These are NavSav's customers with whom Plaintiff and Beber with whom had personal contact and dealings while employed with NavSav.

NavSav filed a Petition against Plaintiff, Beber, Jacqueline Damon, and Unico Group, Inc. (the new employer of Plaintiff, Beber, and Damon, and a competitor of NavSav) on June 26, 2023 in Texas. (See Exhibit 1). On July 6, 2023, the Texas court granted Plaintiff's Motion for Temporary Restraining Order, and issued a temporary restraining order against Plaintiff, Beber, and Damon. (See Exhibit 3). That restraining order, originally set to expire on July 17, 2023, was extended through August 1, 2023. NavSav's Petition, pursuant to Texas law on service of process

3

of out-of-state defendants, was served on Texas's Secretary of State on July 7, 2023. (See Ex. 4).[1] In addition to effective service under Texas law, NavSav's counsel contemporaneously informed Plaintiff's counsel of all developments in Texas. (See Ex. 2, Decl. of Dan Headlee, ¶ 27).

NavSav filed a Third Amended Petition on July 17, 2023, which was served on the Texas Secretary of State with process on July 18, 2023. (See Ex. 1). Plaintiff did not file this action in Nebraska until June 30, 2023, after the filing of the Texas Action. (See Compl.).

Unico Group, Inc. removed the Texas Action state case to the United States District Court for the Eastern District of Texas on July 30, 2023. (See Ex 5). Unico Group, Inc.'s Notice of Removal represented that Plaintiff, Beber, and Damon each consented to Unico Group, Inc.'s removal. *Id.* at p. 10, § V. As of July 24, 2023, there were conflicting restraining orders between the Texas and Nebraska courts. As demonstrated more fully in NavSav's resistance to Plaintiff's motion for preliminary injunction, Plaintiff violated the Texas court's order, whereas NavSav has complied with all applicable orders.

### III.    LEGAL STANDARD

Once a defendant has challenged venue, the burden is on the plaintiff to establish that venue is proper. *Cohen v. Newsweek, Inc.*, 312 F.2d 76, 78 (8th Cir. 1963). The Court must presume that the parties' forum selection clause is valid and should transfer to the agreed-upon venue. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991); *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 973 (8th Cir. 2012). Forum selection clauses should be given controlling weight and be enforced in all but "exceptional cases" or "extraordinary circumstances." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 59-61 (2013). The party opposing

---

[1] "Under Texas law, a non-resident of Texas may be served through the Texas Secretary of State." *Madden Bolt Corporation v. Glen Martin Engineering*, CIVIL ACTION No. H-08-3214, at *6 (S.D. Tex. Feb. 26, 2009) (citing Tex. Civ. Prac. Rem. Code § 17.026(a)). "Fed.R.Civ.P. 4(e) permits service of process on a non-resident defendant pursuant to state statute." *Kervin v. Red River Ski Area, Inc.*, 711 F. Supp. 1383, 1386 (E.D. Tex. 1989).

application of a forum selection clause bears the burden of proving it unenforceable. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013).

### IV.    ARGUMENT

#### A.  Plaintiff's Suit is Advanced in an Improper Venue and Must be Dismissed

The court should dismiss this action based on improper venue. A Rule 12(b)(3) motion to dismiss is the means for seeking dismissal of an action when venue is improper, and the remedy is dismissal. Fed. R. Civ. P. 12; *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013); *City of Neb. v. Baseline Eng'g Corp.*, 867 F.3d 875, 880 (8th Cir. 2017).

The Nonsolicitation Agreement signed by Plaintiff demands that "exclusive jurisdiction and venue" of disputes relating to the Agreement be heard in Jefferson County, Texas, that the parties waive any other venue to which they may be entitled, and that venue in Jefferson County, Texas is "<u>mandatory</u>[.]" (Amd. Compl., Ex. A, § 18) (emphasis in original). Thus, Plaintiff has waived any claim to rely on a basis of venue in 28 U.S.C. § 1391, and venue is improper before this Court.

#### B.  If Plaintiff's Action is not Dismissed, it Should be Transferred to Texas Due to the Nonsolicit Agreement's Forum Selection Clause

Under 28 U.S.C. § 1406(a), when venue is improper, the court must dismiss the action, or if it is in the interest of justice, transfer the action to a proper venue. 28 U.S.C. § 1406(a); *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). When the parties have agreed to a valid forum-selection clause, the court should transfer the case to the specified forum, absent extraordinary circumstances. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 61-64 (2013). Forum selection clauses are **<u>presumed valid and enforceable</u>** in determining the proper venue, including as to whether to transfer

venue. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991); *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 753 (8th Cir. 1999). The parties agreed to a valid, applicable forum selection clause that requires litigation in the transferee district. This nullifies any deference to Plaintiff's chosen forum and requires transfer. There is already a preexisting suit in the proper venue in which Plaintiff may advance his claims. *See, e.g., U.S. Fire Ins. Co. v. Goodyear Tire Rubber*, 920 F.2d 487, 488-89 (8th Cir. 1990); *Nat'l Indem. Co. v. TransAtlantic Reinsurance Co.*, 13 F. Supp. 3d 992, 998 (D. Neb. 2014); *Williston Basin I.S. Pipeline v. Sheehan Pipe Line Const*, 316 F. Supp. 2d 864, 867 (D.N.D. 2004); Fed. R. Civ. P. 13(a)(1). Forum selection clauses should be given controlling weight and be enforced in all but "exceptional cases" or "extraordinary circumstances." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 59-61 (2013).

It is Plaintiff's burden as the party opposing application of a forum selection clause to prove it is unenforceable. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). He has failed to meet this burden. The only objection Plaintiff raises in his Complaint to enforcement of the forum selection clause is a putative lack of consideration, but this assertion falls short. Plaintiff negotiated the terms of his employment with NavSav after its purchase of Universal (Plaintiff's former employer) to receive a higher commission structure. (Ex. 2, Decl. of Dan Headlee, ¶ 12). This alone is adequate consideration. Plaintiff makes note that he was presented with the Nonsolicitation Agreement "after [his] at-will employment had already begun[,]" (Amd. Compl., ¶ 15), in an apparent attempt to vitiate continued employment as consideration. Yet NavSav would not have retained Plaintiff's employment after its acquisition of Universal without execution of the Nonsolicit Agreement, nor would it have agreed to Plaintiff's higher commission structure. (Ex. 2, Decl. of Dan Headlee, ¶ 15).

6

NavSav expects that Plaintiff will seek to blur the question of forum selection with that of choice of law. It is clear from his pleadings that he maintains Nebraska law must apply to this dispute, but this is a separate question from venue. Nebraska and Texas follow the same choice-of-law analysis. *See, e.g., Erickson v. U-Haul Internat*, 278 Neb. 18, 25 (Neb. 2009) ("In choice-of-law determinations, we often seek guidance from the Restatement (Second) of Conflict of Laws."); *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) ("Since 1979, this Court has applied the Restatement's "most significant relationship" test to decide choice of law issues.") (citing the Restatement (Second) of Conflict of Laws).

Thus, if Plaintiff seeks to argue that the choice-of-law provision within the Nonsolicitation Agreement is invalid or that Nebraska law should apply despite the parties' agreement on Texas law, it may make that argument in Texas, under the same choice-of-laws framework that a Nebraska court would apply. Any attempt to conflate these issues and deny venue on this basis is improper. The only applicable question here is whether Plaintiff has met his burden of demonstrating that the *exclusive Texas venue provision* is invalid. He has not. Thus, if this Court does not dismiss this action in favor of the pending Texas Action, it should transfer it to the United States District Court for the Eastern District of Texas, Beaumont Division

## V.   CONCLUSION

For the reasons set forth above, Defendant respectfully requests an Order from this Court (1) dismissing Plaintiff's Complaint and each cause of action asserted in it, without prejudice for refiling as a counterclaim in the Texas Action; or, in the alternative, for an order transferring this suit to the United States District Court for the Eastern District of Texas, Beaumont Division; (2) granting to NavSav its attorneys' fees, costs, and expenses incurred defending the Complaint; and (3) for any other relief that this Court deems just and equitable.

DATED: August 4, 2023.

NAVSAV HOLDINGS, LLC,
Defendant,

*/s/Quinn R. Eaton*
Kenneth M. Wentz, III # 23580
Quinn R. Eaton # 26318
JACKSON LEWIS P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
(402) 391-1991
Kenneth.Wentz@jacksonlewis.com
Quinn.Eaton@jacksonlewis.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF COMPLIANCE</u>

Under NECivR 7.1(d)(3), I, Quinn R. Eaton, hereby certify that Defendant NavSav Holdings, LLC's Brief in Support of Motion to Dismiss, or in the Alternative, Motion to Transfer Venue, complies with the word count limitation provided under the Rule and further certify that the word count function was applied to include all text, including the captions, headings, footnotes, and quotations. This Brief was prepared using Microsoft Word Version 2302 and contains a combined 2,410 words.

*/s/ Quinn R. Eaton*
Quinn R. Eaton

4858-5481-6629, v. 1

8

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| CODY ROACH, | CASE NO: 8:23-cv-00325 |
| Plaintiff, | |
| v. | **PLAINTIFF'S BRIEF IN OPPOSITION DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |
| NAVSAV HOLDINGS, LLC, | |
| Defendant. | |

Plaintiff Cody Roach, by and through his respective counsel, opposes Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue and requests that the Court deny the motion in its entirety.

## I.　INTRODUCTION

On August 22, 2023, the Court issued its memorandum and order granting a preliminary injunction in favor of Roach, finding that Nebraska law applied to the April Agreements and the Universal Agreements, finding that the restrictive covenants in those agreements are not enforceable, and enjoining NavSav from taking any further actions to enforce the noncompetition and non-solicitation covenants in those agreements and from making any further submissions, filings, or appearances in the case *NavSav Holdings, LLC v. Beber, Roach, Damon, and Unico Group, Inc.*, Case No. 1:23-cv-290 pending in the United States District Court for the Eastern District of Texas. Filing No. 27 (the "Texas Case"). This Court quoted the "exclusive" and "mandatory" jurisdiction and venue provisions in section 18 of the April Agreements, and this Court declined to apply those provisions as it asserted jurisdiction over the parties in this venue, and ordered no further submissions, filings or appearances in the Texas Case.

Despite this Court's unambiguous orders, NavSav made a subsequent filing in the Texas Case, though with the Texas Court's apparent blessing, but certainly not with the blessing of this Court. *See*, Filing Nos. 35-1 and 35-2. So, NavSav, standing in direct violation of this Court's orders, asks this Court to dismiss this case or to transfer it to the very court where the Court has ordered NavSav not to make any further submissions, filings or appearances. For these reasons alone, NavSav's motion should be denied.

Moreover, NavSav's motion to dismiss is procedurally improper and can be denied without addressing its merits. NavSav seeks to enforce a choice of forum provision in the April Agreements between NavSav and Roach in favor of a Texas forum. However, the case that NavSav cites in support of its position that it has properly brought a Rule 12(b)(3) motion states: "the Supreme Court has expressly held that parties may not enforce forum-selection clauses through Rule 12(b)(3) motions to dismiss." *City of Benkelman, Nebraska v. Baseline Eng'g Corp.*, 867 F.3d 875, 880 (8th Cir. 2017) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013)).

Consequently, the only motion that is procedurally compliant before the Court is the motion to transfer under 28 U.S.C. § 1404.[1] A motion to transfer requests transfer of a case to another _**federal**_ district court, which NavSav claims should be the Texas Case Court. However, NavSav has taken the position that it would be improper for any federal court to exercise jurisdiction over the case. NavSav claims that the April Agreements require this suit to be maintained only in "District State Court located in Jefferson County, Texas". *See* Filing No. 35-2 at ¶¶ 42-46. Thus, NavSav contends transfer would be improper because the Court can transfer

---

[1] Plaintiff notes that NavSav's motion seeks relief under 28 U.S.C. 1404 so Plaintiff responds to the motion accordingly. However, NavSav's brief references relief under 28 U.S.C. 1406.

only to "any other district or division where it might have been brought or to any district or division to which all parties have consented." *See* 28 U.S.C. § 1404. NavSav cannot have it both ways.

NavSav's pending appeal with the Eighth Circuit Court of Appeals would significantly complicate any potential transfer of this case to another Court and the appeal alone makes this case very different from other situations in which a party seeks transfer based on a choice of forum clause. This Court has substantial knowledge concerning the underlying facts and has undertaken thoughtful analysis on the legal issues in play in this matter; the interests of efficiency and judicial economy weigh heavily toward denying dismissal and transfer.

Finally, the choice of forum clause is not enforceable against Beber, which eliminates NavSav's only arguments for dismissal or transfer. The April Agreements fail for lack of consideration, making the entire agreement including the choice of forum clause unenforceable. That issue was previously briefed and is incorporated here by reference. *See* Filing No. 14 at 9-12. Nebraska law – not Texas law – applies to the contract and the question of whether the choice of forum clause is enforceable. First, a trial in Texas would be substantially less convenient than in Omaha, Nebraska because the relevant persons are located here, including some of NavSav's potential witnesses and a substantial majority of the customers that have chosen to continue doing business with Roach instead of working with NavSav. There is no dispute that it would be much less convenient for the vast majority of witnesses in this case to travel the 900+ miles to Beaumont, Texas than to appear in Omaha for trial. Second, the April Agreements were obtained *after* Beber started his employment with NavSav, without consideration, and as NavSav has said – if Beber didn't sign the April Agreements, he would have been fired. Putting someone's livelihood on the line for signature of an agreement that was not negotiated and is completely one-sided is a textbook

3

example of an abuse of economic power. Finally, it would be unreasonable to enforce the agreement given the posture of this case, its significant progress to date, and the fact that it would likely cause piecemeal litigation on the relevant issues.

## II.    BACKGROUND

Roach recognizes that the Court is familiar with the background for this case as it has already received briefing, evidence, and argument on the background to this case and issues relating to choice of law in connection with the preliminary injunction that the Court issued on August 22, 2023. Roach refers the Court to the relevant facts and evidence filed in support of his motion for a preliminary injunction and to relevant evidence offered by Defendant as background.

## III.    ARGUMENT

### A.  NavSav's Motion is Procedurally Improper

Black letter law from the United States Supreme Court dooms NavSav's Motion to Dismiss. In *Atl. Marine Constr. Co.*, the Supreme Court stated:

> Atlantic Marine contends that a party may enforce a forum-selection clause by seeking dismissal of the suit under § 1406(a) and Rule 12(b)(3). We disagree. Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause.

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). NavSav's brief citing this case, argues that venue is "improper." Filing No. 19 at 4-5. NavSav is wrong; "the Supreme Court has expressly held that parties may not enforce forum-selection clauses through Rule 12(b)(3) motions to dismiss." *City of Benkelman, Nebraska*, 867 F.3d at 880. To the extent that NavSav requests transfer under 28 U.S.C. § 1406(a) (*See* Filing No. 19 at 5-7),

NavSav's request to transfer is also improper as the Supreme Court has made it clear that a motion to transfer under 28 U.S.C. § 1406(a) is not the proper method to attempt to enforce a choice of forum clause.

**B.  Nebraska law applies to the April Agreements.**

"Simplicity argues for determining the validity and meaning of a forum selection clause," at least when "interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears." *Abbott Labs. v. Takeda Pharm. Co*., 476 F.3d 421, 423 (7th Cir. 2007). As a result, to determine whether the choice of forum provision in the April Agreements are valid, even if supported by consideration, the Court must determine what substantive law will apply to the April Agreements as a whole.

Nebraska law governs the April Agreements (despite the presence of a Texas choice-of-law clause) because Nebraska is the situs of the parties' relationship and the April Agreements were for personal services predominantly performed in Nebraska, with none performed or assigned to be performed in Texas. Because there is an actual conflict between application of Texas and Nebraska law to this dispute, the Court must determine which jurisdiction's law applies. The Court undertook this analysis in its order issuing a preliminary injunction in Roach's favor. Filing No. 26 at 18-24. The facts and law are unchanged since the Court issued its decision approximately one month ago, so the outcome also should be unchanged. Nebraska law applies to the April Agreements.

The conflict-of-law rules for the state in which this Court sits apply. *See, e.g., Inacom Corp. v. Sears, Roebuck & Co.,* 254 F.3d 683,687 (8th Cir. 2001). The Restatement (Second) of Conflict of Laws governs in Nebraska. *Am. Nat. Bank v. Medved,* 801 N.W.2d 230, 237

(Neb. 2011); *see also Inacom Corp.,* 254 F.3d at 687. In general, Nebraska courts honor choice-of-law clauses. *Medved,* 801 N.W.2d at 236. However, section 187 of the Restatement (Second) of Conflict of Laws, as quoted in Roach's Motion for a Temporary Restraining Order must be considered. Restatement (Second) of Conflict of Laws § 187 (1971); *see also Medved,* 801 N.W.2d at 237 (adopting section 187); *See DCS Sanitation Mgmt., Inc. v. Castillo,* 435 F.3d 892, 896 (8th Cir. 2006).

Section 187(1) does not apply because, as cited below, Nebraska Courts lack the power to reform unenforceable restrictive covenants. The exceptions under section 187(2) apply. *Castillo,* 435 F.3d at 896. Nebraska has a more substantial and materially greater interest in enforcing the agreement between Roach and NavSav. *See id.; see also Hill v. Antioch Co.,* No. 8:09CV275, 2009 WL 3838251, at *4 (D. Neb. Nov. 17, 2009). In the context of a restrictive covenant involving a contract for the rendition of services, there is a presumption that the state where "a major portion" of the services will be rendered, is the state with the most significant relationship. *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 709, 625 N.W.2d 197, 203 (2001) (citing Restatement (Second) of Conflict of Laws § 196). In this case, Nebraska has a greater interest in this NavSav Agreement. The only connection to Texas is that NavSav is incorporated there. In contrast, the connection to Nebraska is substantial and materially greater for the reasons and Nebraska connections stated above. Moreover, NavSav hired a Nebraska resident (Roach) to assist NavSav in selling insurance policies in Nebraska and Iowa, but not in Texas. NavSav never assigned Roach to an office in Texas or to territories in Texas. Throughout his employment with NavSav, Roach was never assigned to solicit customers located in Texas, and Roach never solicited or procured customers in Texas. Instead, the vast majority of

6

the policies Roach solicited or procured for NavSav were to policyholders located in Nebraska and Iowa. Paychecks received by Roach pursuant to his employment with NavSav deducted withholdings for Nebraska state income tax.

Nebraska and Texas law are vastly different as applied to post-employment restrictive covenants. Nebraska law provides that such a covenant "is valid only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and [had] personal contact." *Prof'l Bus. Servs. Co. v. Rosno,* 268 Neb. 99, 110-11, 680 N.W.2d 176, 185 (2004) (quotation omitted). Moreover, if such a covenant is overbroad, the covenant cannot be reformed or enforced to any extent. By contrast, Texas law does not require that "the former employee actually did business and [had] personal contact" with the former employer's clients or accounts. *See Molina v. Air Starter Components, Inc.*, No. 01-03-00175-CV, 2004 WL 1277491, at *9 (Tex. App. June 10, 2004); Tex. Bus. & Com. Code Ann. § 15.51(c), requiring that a Texas "court shall reform the covenant to the extent necessary . . . .").

The Eighth Circuit Court of Appeals has addressed this very issue, applying Nebraska law and declining to enforce a provision of an employment contract making Iowa law applicable to the agreement on the grounds that Iowa law would be contrary to fundamental public policy of Nebraska. *Rain and Hail Ins. Service, Inc. v. Casper*, 902 F.2d 699 (8th Cir. 1990). The Eighth Circuit Court of Appeals refused to enforce a choice of Iowa law contractual provision for an employee working in Nebraska, finding that

> [a]lthough Nebraska law generally allows parties to choose which jurisdiction's law will apply in a contract dispute (here Iowa law), the court nevertheless applied Nebraska law, reasoning that application of Iowa law would be contrary to a fundamental policy of Nebraska. Under Nebraska law, contracts in restraint of trade must be no greater than reasonably necessary to protect the employer in some legitimate interest.

7

*Rain and Hail Ins. Service, Inc. v. Casper*, 902 F.2d at 700-01 (citing *Polly v. Ray D. Hilderman Co.*, 225 Neb. 662, 407 N.W.2d 751, 754 (1987)).

Application of Nebraska law now is critical to prevent a Nebraska court from being forced to grant an injunction or enforce a judgment that does not adhere to Nebraska law and public policy. And this is not a close call. Nebraska law has the most significant relationship to the contract and the parties. As a result, Nebraska law applies to this case despite the presence of a Texas choice-of-law provision in the April Agreements.

## C. Under Nebraska Rev. Stat. § 25-415, the choice of forum provision in the April Agreements is unenforceable.

Under Nebraska law, which governs the April Agreements:

> If the parties have agreed in writing that an action on a controversy shall be brought only in another state and it is brought in a court of this state, the court will dismiss or stay the action, as appropriate, unless (1) the court is required by statute to entertain the action; (2) the plaintiff cannot secure effective relief in the other state, for reasons other than delay in bringing the action; (3) the other state would be a substantially less convenient place for the trial of the action than this state; (4) the agreement as to the place of the action was obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means; or (5) it would for some other reason be unfair or unreasonable to enforce the agreement.

NEB. REV. STAT. § 25-415.

While choice of forum clauses are enforceable generally, the circumstances before the Court do not warrant enforcement of the April Agreements or the choice of forum clause within the April Agreements. One of the few Nebraska cases to apply Neb. Rev. Stat. § 25-415 addressed the intersection of this statute and public policy considerations head on:

> Can we therefore say that a provision of a contract enacted pursuant to a statute adopted by the Legislature of the State of Nebraska is contrary to public policy? We believe that, under generally recognized rules applicable to cases of this nature, we cannot. What is public policy must be determined from a consideration of the federal and state Constitutions, the laws, the decisions of the courts, and the course of administration, and not by the varying opinions of laymen, lawyers, or judges.

8

*Haakinson & Beaty Co. v. Inland Ins. Co.*, 216 Neb. 426, 429, 344 N.W.2d 454, 457 (1984). In that case, the Nebraska Supreme Court declined to find a choice of forum clause unenforceable because the underlying contract (a bond) conformed to Nebraska statutes. The Nebraska Supreme Court also recognized: "By granting to the trial court the opportunity to refuse to dismiss the action where facts consistent with the limitations of § 25-415 exist, the courts are not denied their inherent authority to consider appropriate matters presented to them." *Id.*

This is one of those situations. The Court has already determined that Nebraska law applies to the April Agreements and provisions in the April Agreements violate Nebraska public policy. Filing No. 26 at 28. "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L. Ed. 2d 513 (1972). This is a case that involves people and conduct that are almost wholly in Nebraska and touches upon the State of Nebraska's clear position regarding what restrictions may be placed on employees working in Nebraska.

Moreover, the factors outlined in Neb. Rev. Stat. § 25-415 weigh in favor of the Court denying a motion to dismiss (or transfer). First, trial in Texas would be a substantially less convenient than in Nebraska. There is ample evidence in the record as to this point. Most of the customers allegedly being solicited who NavSav would need to call as witnesses are in Nebraska. Beber and Roach are in Nebraska and Damon is in neighboring Iowa. Even NavSav, who makes much of the fact that it is Texas-based, maintains a Nebraska office, alleges the action arises out of conduct in that office, and has submitted evidence through Dan Headlee, the former owner of Universal Group, who Roach believes to still be a Nebraska resident. It should go without saying that holding a trial more than 900 miles away from the home county for the vast majority of the

9

witnesses at trial is "substantially less convenient." Second, there was a clear abuse of economic power by NavSav in obtaining the April Agreements. NavSav's position in this case is that it would have fired Roach if he did not sign the April Agreements, pitting his job against a one-sided boilerplate document presented after he already started working for NavSav. *See* Dan Headlee Dec., Filing No. 20-2 ¶ 15. Third, it would be both unreasonable and unfair to enforce the choice of forum provision against Roach because the substance of the agreement is unenforceable and there has been substantial progress in this case (including a pending appeal).

**D. Transfer of this case to Texas is not proper or appropriate.**

In the alternative to its motion to dismiss, NavSav asks the Court to transfer this case to the United States District Court for the Eastern District of Texas, Beaumont Division. That request is based on 28 U.S.C. §1404 which, as NavSav notes, turns on the enforceability of the choice of forum clause in the April Agreements. NavSav's brief mistakenly argues for application of 28 U.S.C. §1406 and provides a rationale for the Court to transfer under 28 U.S.C. §1406. For the reasons stated above, the April Agreements are not enforceable under Nebraska law. Without the April Agreements, there is absolutely no basis to transfer cases brought in Nebraska, by Nebraska residents, against an entity licensed and registered to business in Nebraska, that concerns conduct in Nebraska, and the ability to engage in lawful competition in Nebraska. This is particularly true when NavSav asks for the Court to transfer the case to a Texas federal court even though NavSav is simultaneously arguing in another court that the Texas federal court does not have jurisdiction over the case. Filing No. 35-2 at ¶¶ 42-26. The Court should reject NavSav's attempt to argue opposite legal positions in two different courts and deny NavSav's request to transfer.

WHEREFORE, for the reasons stated above Plaintiff Cody Roach respectfully requests that the Court deny Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue in its entirety.

DATED: September 26, 2023.

CODY ROACH,  Plaintiff,

By: */s/Andrew S. Tugan*

Gregory C. Scaglione, #19368
Andrew S. Tugan, #26917
Emily M. Coffey, #27308
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE  68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
Greg.Scaglione@koleyjessen.com
Andrew.Tugan@koleyjessen.com
Emily.Coffey@koleyjessen.com

*Attorneys for Plaintiff.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 26, 2023, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which sent notification of such filing to all CM/ECF participants.

*/s/Andrew S. Tugan*
Andrew S. Tugan

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CODY ROACH<br>　　Plaintiff,<br><br>v.<br><br>NAVSAV HOLDINGS, LLC,<br>　　Defendant. | Case No. 8:23-cv-325<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |

NavSav Holdings, LLC, ("NavSav"), through its undersigned counsel, submits this Reply Brief in Support of Its Motion to Dismiss or In the Alternative, Motion to Transfer Venue.

## I.　INTRODUCTION

Plaintiff's opposition to adhering to his unequivocal consent to jurisdiction in another venue relies entirely on convincing this Court to blur together two separate issues and make findings not currently at-issue. Plaintiff seeks to accelerate a final determination as to the substantive choice of law to apply to the noncompete/solicitation provisions of the April Agreements—while sidestepping the mandatory and exclusive jurisdiction provision that makes this venue improper, regardless of which substantive law applies. Plaintiff relies on *preliminary* determinations of this Court, focused on the merits of enforcement of the April Agreements' noncompete/solicitation provisions. These questions are premature and irrelevant to disposition of the solitary issue presented here: venue.

## IV.　ARGUMENT

### A. Plaintiff Consented to Venue in Texas—Regardless of the Substantive Law

Plaintiff's argument dives immediately into the substantive merits of the case at large - arguing for application of Nebraska law as to noncompete/solicitation covenants. But venue is a matter of procedure, and, as such, governed by federal law. *Hanna v. Plumer*, 380 U.S. 460 (1965).

1

Plaintiff expands the relevant issue beyond its scope by attacking the contract as a whole rather than simply the forum selection provision. The Supreme Court has held that "forum-selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Plaintiff must present a "strong showing" that such a provision should be set aside. *Id.* at 15.

Plaintiff's attempt to make this showing is to return to substantive merits of the case and this Court's preliminary finding as to the enforceability of a noncompete provision in Nebraska. But this analysis sidesteps the relevant issue. In *Fitzgibbons v. Hill-Rom Co.*, a plaintiff similarly sought to conflate separate issues by arguing that because the defendant breached a contract, the forum-selection clause at issue was unenforceable. 2012 U.S. Dist. LEXIS 91289, *5 (D.S.D. June 28, 2012). Yet this Court's sister court noted that "forum-selection clauses are not substantive clauses where the enforceability is destroyed by a material breach. Additionally, it is counterintuitive to require the court to determine whether a contract has been breached and thus is unenforceable prior to determining which forum has jurisdiction over the claim." *Id.* at *6 (citation omitted). While the plaintiff's argument in *Fitzgibbons* was based on an allegedly excused performance due to another party's breach, this argument is analogous to Plaintiff's argument here that alleged substantive unenforceability of a separate provision in the April Agreements somehow renders the forum-selection provision unenforceable. The issues are separate. Plaintiff's attempts to blur them together should not be indulged.

The plaintiff in *Fitzgibbons* similarly attempted to argue that litigation in the forum to which he consented would be inconvenient. But the court held that "the financial inconvenience of litigating in accordance with the forum-selection clause does not bear on the validity or

enforceability of the clause itself." *Id.* at \*7. Plaintiff does the same here by attempting to weave the issue of choice-of-law for substantive enforcement of a noncompete into the issue of forum-selection by pointing to the alleged inconvenience of suit in Texas. Defendant's prior briefing addresses the factors that Plaintiff seeks to rely on regarding choice-of-law.[1] Even if considered in this context, those factors are essentially a wash and do not point so convincingly towards Nebraska as Plaintiff would seek to assert.

Once the issue to be decided on this Motion is properly contextualized, the only relevant arguments of Plaintiff consist of allegations that the forum-selection clause is invalid due to alleged inequal bargaining power or lack of consideration. But both such arguments fail. In the context of arbitration—which permits avoidance of arbitration if an arbitration provision is legally unenforceable, 9 U.S.C. § 2—courts routinely reject arguments like those made by Plaintiff. "Mere inequality in bargaining power" does not render a provision unconscionable. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) *see also Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 49 (Ind. App. 2005) ("A standardized contract is not unenforceable merely because of the unequal bargaining power of the parties—there must also be a showing that the contract is unconscionable."). Plaintiff does little else to meet the burden of proving unconscionability other than to generically assert the situation was unfair due to the inequality of bargaining power. But this scenario is true regarding virtually every contract an individual enters into with a business throughout their life, and courts routinely and soundly reject such arguments.

As to the alleged lack of consideration, Defendant's employment of Plaintiff was contingent on agreeing to the April Agreements. Even if not executed prior to beginning

---

[1] *See also Heartland Family Servs. v. Netsmart Techs., Inc.*, 961 F. Supp. 2d 964, 969-70 (D. Neb. 2013) (rejecting argument that state consented to—Illinois—was inconvenient due to 19 witnesses in Nebraska and Iowa, as parties knew at the time of contracting this was likely true, and such considerations did not mean Illinois courts were incapable of performing substantial justice).

employment, this expectation was present at the outset, and Plaintiff's employment would not have continued otherwise. *See, e.g.*, *Chilson v. Retalix USA, Inc.*, 8:07CV101, at \*5 (D. Neb. Oct. 2, 2007); *Medtronic, Inc. v. Gibbons*, 527 F. Supp. 1085, 1093 (D. Minn. 1981); *McNamara v. Yellow Transp*, 570 F.3d 950, 956 (8th Cir. 2009); *Central States Industrial Supply, Inc. v. McCullough*, No. C 02-0052-MWB, at \*37 (N.D. Iowa Sep. 3, 2003). Beyond simply employment and its continuation, Defendant also testified that Plaintiff was given access to confidential information— information he now uses against Defendant—that Defendant would not have provided absent Plaintiff's execution of the April Agreements. The essential elements of a contract were met. Plaintiff's argument otherwise is again simply an improper conflating of the substantive merits of the case—rather than the procedural issue as to whether Plaintiff consented to jurisdiction elsewhere. Plaintiff agreed not to bring suit in this Court; the matter must be dismissed or transferred.

### B. This Matter Should be Dismissed or Transferred to Texas

Plaintiff argues that Defendant cannot seek a transfer of this matter to the federal courts of Texas while simultaneously arguing that only Texas state court is proper. But this situation is of Plaintiff's own creation. Defendant originally filed suit in the proper state court of Texas, only for Plaintiff to remove it to federal court. Were the matter still in Texas state court, Defendant would simply seek a dismissal from this Court. However, given the circumstances created by Plaintiff, and acknowledging that courts prefer transfer over dismissal, *Heartland*, 961 F. Supp. 2d at 969, Defendant seeks transfer in the alternative.

Once this matter is at least moved back to the proper *state*, the courts there may determine whether state or federal court within that state is proper. This is simply yet another matter of Plaintiff conflating issues and seeking premature legal rulings. The current court hearing this

4

matter in Texas can decide whether state or federal court is proper. Whichever court in Texas retains jurisdiction can *then determine what law applies to this dispute*. As Defendant has noted repeatedly, Plaintiff can still argue for the application of Nebraska law, and Texas courts— applying the same choice-of-law framework as Nebraska—will have the opportunity to decide if Nebraska law should apply. Plaintiff does not lose that argument by a transfer to the proper court. Then, regardless of which law applies, Plaintiff can then still argue against the enforceability of the various substantive provisions at issue in the April Agreements.

All of these questions are issues for a later date.

At hand is whether Plaintiff consented to venue elsewhere: *he did*. And that consent is enforceable. This matter must be dismissed or transferred.

## V.   CONCLUSION

For the reasons set forth above and in its original motion, Defendant respectfully requests an Order from this Court (1) dismissing Plaintiff's Complaint and each cause of action asserted in it, without prejudice for refiling as a counterclaim in the Texas Action; or, in the alternative, for an order transferring this suit to the United States District Court for the Eastern District of Texas, Beaumont Division; (2) granting to NavSav its attorneys' fees, costs, and expenses incurred defending the Complaint; and (3) for any other relief that this Court deems just and equitable.

DATED: October 10, 2023.

NAVSAV HOLDINGS, LLC,
Defendant,

*/s/Quinn R. Eaton*
Kenneth M. Wentz, III # 23580
Quinn R. Eaton # 26318
JACKSON LEWIS P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
(402) 391-1991
Kenneth.Wentz@jacksonlewis.com
Quinn.Eaton@jacksonlewis.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF COMPLIANCE

Under NECivR 7.1(d)(3), I, Quinn R. Eaton, hereby certify that Defendant NavSav Holdings, LLC's Reply Brief in Support of Motion to Dismiss, or in the Alternative, Motion to Transfer Venue, complies with the word count limitation provided under the Rule and further certify that the word count function was applied to include all text, including the captions, headings, footnotes, and quotations. This Brief was prepared using Microsoft Word Version 2273 and contains a combined 1,585 words.

*/s/ Quinn R. Eaton*
Quinn R. Eaton

4883-4380-0710, v. 1

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| CODY ROACH<br>    Plaintiff,<br><br>v.<br><br>NAVSAV HOLDINGS, LLC,<br>    Defendant. | Case No. 8:23-cv-325<br><br>**DEFENDANT'S ANSWER AND<br>AFFIRMATIVE DEFENSES** |

NavSav Holdings, LLC, ("NavSav"), through its undersigned counsel, submits its Answer and Affirmative Defenses in response to Plaintiff Cody Roach's ("Roach") Amended Complaint.

**PARTIES JURISDICTION AND VENUE**

1.      Defendant admits that Plaintiff is an individual residing in Omaha, Nebraska. Defendant is without sufficient information to admit/deny the remaining allegations in paragraph 1 of the Complaint, and therefore denies the remaining allegations.

2.      Defendant admits that NavSav is a Texas Limited Liability company with its principal place of business in Beaumont, Texas.

3.      Defendant admits the allegations in paragraph 3 of the Complaint.

4.      Defendant admits the allegations in paragraph 4 of the Complaint.

5.      Defendant lacks sufficient information to admit or deny licensing information regarding Universal Group, Ltd., and therefore denies the same. Defendant denies the remaining allegations in paragraph 5 of the Complaint.

6.      Defendant denies that jurisdiction is proper based on the terms of the agreements signed by Plaintiff, and denies the allegations in paragraph 6 of the Complaint.

1

7.      Defendant denies that venue is proper based on the terms of the agreements signed by Plaintiff, and denies the allegations in paragraph 7 of the Complaint.

8.      Defendant is without sufficient information to admit or deny the allegations in paragraph 8 of the Complaint, and therefore denies the same.

9.      Defendant is without sufficient information to admit or deny the allegations in paragraph 9 of the Complaint, and therefore denies the same.

10.      Defendant is without sufficient information to admit or deny the allegations in paragraph 10 of the Complaint, and therefore denies the same.

11.      Defendant is without sufficient information to admit or deny the allegations in paragraph 11 of the Complaint, and therefore denies the same.

12.      Defendant is without sufficient information to admit or deny the allegations in paragraph 12 of the Complaint and therefore denies the same.

13.      Paragraph 13 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 13 of the Complaint.

14.      Defendant denies the allegations in paragraph 14 of the Complaint.

15.      Defendant admits that Roach signed employment related agreements. The remainder of paragraph 15 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 15 of the Complaint.

16.      Defendant admits the allegations in paragraph 16 of the Complaint.

17.     Defendant admits that the document attached as Exhibit A to the Complaint appears to be an accurate copy of an agreement signed by Plaintiff. Defendant denies the remaining allegations in paragraph 17 of the Complaint.

18.     Defendant admits that Roach signed employment related agreements. The remainder of paragraph 18 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 18 of the Complaint.

19.     Defendant admits the allegations in paragraph 19 of the Complaint.

20.     Defendant is without sufficient information to admit or deny the allegations in paragraph 20 of the Complaint and therefore denies the same.

21.     Defendant denies the allegations in paragraph 21 of the Complaint.

22.     Paragraph 22 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 22 of the Complaint.

23.     Defendant admits that it withheld Nebraska incomes taxes from Roach. Defendant denies the remaining allegations in paragraph 23 of the Complaint.

24.     Paragraph 24 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 24 of the Complaint.

25.     Defendant states that the referenced document speaks for itself.

26.     Defendant states that the referenced document speaks for itself.

27.     Defendant states that the referenced document speaks for itself.

28. Defendant admits that Roach advised NavSav clients regarding various items including policy coverage and loss mitigation. Defendant denies the remaining allegation in paragraph 28 of the Complaint.

29. Defendant admits Roach worked out of NavSav's Omaha, Nebraska office. Defendant denies the remaining allegations in paragraph 29 of the Complaint.

30. Defendant admits Roach solicited and procured NavSav policyholders in Nebraska and Iowa. Defendant denies the remaining allegations in paragraph 30 of the Complaint.

31. Defendant admits the allegations in paragraph 31 of the Complaint.

32. Defendant admits the allegations in paragraph 32 of the Complaint.

33. Paragraph 33 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 33 of the Complaint.

34. Defendant admits that Roach's email account was blocked on June 2, 2023 and that Roach and Dan Headlee had a conversation. Defendant denies the remaining allegations in paragraph 34.

35. Defendant is without sufficient information to admit or deny the allegations in paragraph 35 and therefore denies the same.

36. Defendant admits it considered June 2, 2023, to be Roach's last day worked. Defendant denies the remaining allegations in paragraph 36 of the Complaint.

37. Defendant admits its attorneys sent Roach a letter, and Exhibit C to the Complaint is an accurate copy of that letter. Defendant is without sufficient information to admit or deny the remaining allegations in paragraph 37 of the Complaint, and therefore denies the same.

38.     Defendant admits that the contents of the letter referenced in paragraph 38 of the Complaint speak for itself. Defendant denies the remaining allegations in paragraph 38 of the Complaint.

39.     Defendant is without sufficient information to admit or deny the allegations in paragraph 39 of the Complaint and therefore denies the same.

40.     Defendant is without sufficient information to admit or deny the allegations in paragraph 40 of the Complaint and therefore denies the same.

41.     Paragraph 41 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 41 of the Complaint.

42.     Defendant is without sufficient information to admit or deny the allegations in paragraph 42 of the Complaint, and therefore denies the same.

43.     Defendant is without sufficient information to admit or deny the allegations in paragraph 43 of the Complaint, and therefore denies the same.

44.     Paragraph 44 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 44 of the Complaint.

45.     Defendant admits the allegations in paragraph 45 of the Complaint.

46.     Defendant admits the allegations in paragraph 46 of the Complaint.

47.     Defendant admits the allegations in paragraph 47 of the Complaint.

48.     Defendant admits Roach requested his PTO be paid out in his resignation letter. Defendant denies the remaining allegations in paragraph 48 of the Complaint.

49.     Defendant admits the allegations in paragraph 49 of the Complaint.

50.     Paragraph 50 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 50 of the Complaint.

51.     Defendant denies the allegations in paragraph 51 of the Complaint.

52.     Defendant denies the allegations in paragraph 52 of the Complaint.

**FIRST CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT: PARTS OF THE NAVSAV AGREEMENT ARE INVALID AND UNENFORCEABLE, INCLUDING WITHOUT LIMITATION THE RESTRICTIVE COVENANTS**

53.     Defendant incorporates its responses to the previous paragraphs as if fully set forth herein.

54.     Defendant avers that the Statute speaks for itself and admits that paragraph 54 includes an accurate excerpt from the cited statute.

55.     Defendant avers that the Statute speaks for itself and admits that paragraph 55 includes an accurate excerpt from the cited statute.

56.     Defendant avers that the Statute speaks for itself and admits that paragraph 56 includes an accurate excerpt from the cited statute.

57.     Defendant avers that the Statute speaks for itself and admits that paragraph 57 includes an accurate excerpt from the cited statute.

58.     The allegations in paragraph 58 of the Complaint contain legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 58 of the Complaint.

6

59. Paragraph 59 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 59 of the Complaint.

60. Paragraph 60 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 60 of the Complaint.

61. Paragraph 61 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 61 of the Complaint.

62. Paragraph 62 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 62 of the Complaint.

63. Paragraph 63 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 63 of the Complaint.

64. Paragraph 64, including subparts (a) and (b) of the Complaint contain legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 64, including subparts (a) and (b) of the Complaint.

65. Defendant admits Plaintiff is a resident of Omaha, Nebraska. Defendant is without sufficient information to admit or deny the remaining allegations in paragraph 65 and therefore denies the same.

66. Defendant admits that it has authorized agents in Nebraska. The remainder of paragraph 66 contains legal conclusions to which no response is required or made. To the extent a

response is required, Defendant denies the allegations in paragraph 66 of the Complaint.

67.     Defendant denies that this Court has jurisdiction over the parties based on the agreements signed by Plaintiff. The remainder of paragraph 67 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 67 of the Complaint.

68.     Paragraph 68 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 68 of the Complaint.

69.     Paragraph 69 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 69 of the Complaint.

70.     Defendant admits that it has authorized agents in Nebraska. The remainder of paragraph 70 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 70 of the Complaint.

71.     Defendant denies that this Court has jurisdiction over the parties based on the agreements signed by Plaintiff. The remainder of paragraph 71 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 71 of the Complaint.

72.     Defendant admits that it has conducted and continues to conduct business in Nebraska and it employed Roach. The remainder of paragraph 72 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 72 of the Complaint.

73.     Paragraph 73 of the Complaint contains legal conclusions to which no response is

8

required or made. To the extent a response is required, Defendant denies the allegations in paragraph 73 of the Complaint.

74.     Paragraph 74 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 74 of the Complaint.

75.     The quoted section of Defendant's agreement with Roach speaks for itself. The remainder of paragraph 75 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 75 of the Complaint.

76.     Paragraph 76 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 76 of the Complaint.

77.     Defendant denies that Roach is entitled to the relief requested in paragraph 77 of the Complaint. The remainder of paragraph 77 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 77 of the Complaint.

78.     Defendant avers that the Statute speaks for itself and admits that paragraph 78 includes an accurate excerpt from part of the cited statute.

79.     Defendant denies the allegations in paragraph 79 of the Complaint.

80.     Paragraph 80 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 80 of the Complaint.

81.     Paragraph 81 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 81 of the Complaint.

82.     Paragraph 82 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 82 of the Complaint.

83.     Paragraph 83, including 83(a) and 83(b), of the Complaint contain legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 83 of the Complaint including subparts 83(a) and 83(b).

84.     Paragraph 84 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 84 of the Complaint.

85.     Paragraph 85 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 85 of the Complaint.

86.     Paragraph 86 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 86 of the Complaint.

87.     Paragraph 87 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 87 of the Complaint.

88.     Paragraph 88 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 88 of the Complaint.

89.      Paragraph 89 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 89 of the Complaint.

90.     Defendant admits that the referenced agreement is a contract. The remainder of Paragraph 90 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the remaining allegations in paragraph 90 of the Complaint.

91.     Paragraph 91 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 91 of the Complaint.

92.     Paragraph 92 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 92 of the Complaint.

93.     Paragraph 93 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 93 of the Complaint.

94.     Paragraph 94, including 94(a) and 94(b), of the Complaint contain legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 94 of the Complaint including subparts 94(a) and 94(b). Defendant

11

denies that Plaintiff is entitled to the relief set forth in the unnumbered paragraph following paragraph 94, or any relief whatsoever.

## SECOND CLAIM FOR RELIEF
### TEMPORARY AND PERMANENT INJUNCTIONS

95.     Defendant incorporates its responses in the foregoing paragraphs as if fully set forth herein.

96.     Paragraph 96 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 96 of the Complaint.

97.     Paragraph 97 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 97 of the Complaint. Defendant denies that Plaintiff is entitled to the relief set forth in the unnumbered paragraph following paragraph 97, or any relief whatsoever.

## THIRD CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS OR EXPECTANCIES

98.     Defendant incorporates its responses in the foregoing paragraphs as if fully set forth herein.

99.     Paragraph 99 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 99 of the Complaint.

100.    Defendant denies the allegations in paragraph 100 of the Complaint.

101.    Defendant denies the allegations in paragraph 101 of the Complaint.

102.    Paragraph 102 of the Complaint contains legal conclusions to which no response is

required or made. To the extent a response is required, Defendant denies the allegations in paragraph 102 of the Complaint.

103.    Paragraph 103 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 103 of the Complaint.

104.    Paragraph 104 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 104 of the Complaint.

105.    Paragraph 105 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 105 of the Complaint. Defendant denies that Plaintiff is entitled to the relief set forth in the unnumbered paragraph following paragraph 105, or any relief whatsoever.

## FOURTH CLAIM FOR RELIEF
## VIOLATIONS OF THE NEBRASKA WAGE PAYMENT AND COLLECTION ACT

106.    Defendant incorporates its responses in the foregoing paragraphs as if fully set forth herein**.**

107.    Defendant denies the allegations in paragraph 107 of the Complaint.

108.    Defendant admits the allegations in paragraph 108 of the Complaint.

109.    Defendant admits the allegations in paragraph 109 of the Complaint.

110.    Defendant admits Roach requested his PTO be paid out in his resignation letter. Defendant denies the remaining allegations in paragraph 110 of the Complaint.

111.    Defendant admits the allegations in paragraph 111 of the Complaint.

112.    Paragraph 112 of the Complaint contains legal conclusions to which no response is

required or made. To the extent a response is required, Defendant denies the allegations in paragraph 112 of the Complaint.

113.    Paragraph 113 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 113 of the Complaint.

114.    Defendant avers that the Statute speaks for itself and admits that paragraph 114 includes an accurate excerpt from part of the cited statute.

115.    Paragraph 115 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 115 of the Complaint.

116.    Paragraph 116 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 116 of the Complaint.

117.    Paragraph 117 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 117 of the Complaint.

118.    Paragraph 118 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 118 of the Complaint.

119.    Paragraph 119 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 119 of the Complaint. Defendant denies that Plaintiff is entitled to the relief set forth in the unnumbered paragraph following paragraph 119, or any relief whatsoever.

**FIFTH CLAIM FOR RELIEF**

**VIOLATIONS OF THE NEBRASKA WAGE PAYMENT AND COLLECTION ACT – UNPAID AND EARNED COMMISSIONS**

120.    Defendant incorporates its responses in the foregoing paragraphs as if fully set forth herein.

121.    Defendant denies the allegations in paragraph 121 of the Complaint.

122.    Defendant admits Roach earned commissions at NavSav. Defendant denies the remaining allegations in paragraph 122 of the Complaint.

123.    Defendant denies the allegations in paragraph 123 of the Complaint.

124.    Defendant admits more than two weeks have passed since Roach's last day of employment with Defendant. Defendant denies the remaining allegations in paragraph 124 of the Complaint.

125.    Paragraph 125 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 125 of the Complaint.

126.    Defendant avers that the Statute speaks for itself and admits that paragraph 126 includes an accurate excerpt from part of the cited statute.

127.    Paragraph 127 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 127 of the Complaint.

128.    Paragraph 128 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 128 of the Complaint.

129.    Paragraph 129 of the Complaint contains legal conclusions to which no response is

15

required or made. To the extent a response is required, Defendant denies the allegations in paragraph 129 of the Complaint.

130.    Paragraph 130 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 130 of the Complaint.

131.    Paragraph 131 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 131 of the Complaint. Defendant denies that Plaintiff is entitled to the relief set forth in the unnumbered paragraph following paragraph 131, or any relief whatsoever.

## AFFIRMATIVE DEFENSES

1.    The Complaint fails to state a claim upon which relief can be granted and fails to allege sufficient facts necessary to state a claim.

2.    Plaintiff seeks an advisory opinion which is improper for a declaratory judgment action.

3.    Plaintiff is barred from seeking the requested relief under the doctrine of unclean hands.

4.    Plaintiff's own acts or omissions caused or contributed to any damages he claims.

5.    Plaintiff failed to mitigate his damages, if any.

6.    Defendant intends to rely on any other defenses that may become available, appear during, or are the result of further action in this matter, and hereby reserves its right to amend this Answer to assert such defenses.

WHEREFORE, Defendant respectfully requests that the Court: (1) enter judgment in its favor; (2) dismiss the Complaint with prejudice and on the merits; (3) enter an order granting to

the Defendant its attorneys' fees, costs, and expenses incurred in defending this action, as well as other relief deemed just and equitable under the circumstances.

DATED: February 7, 2024.

NAVSAV HOLDINGS, LLC,
Defendant,

*/s/Kenneth M. Wentz III*
Kenneth M. Wentz III # 23580
Quinn R. Eaton # 26318
Ross M. Serena # 27483
JACKSON LEWIS P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska  68114
(402) 391-1991
Kenneth.Wentz@jacksonlewis.com
Quinn.Eaton@jacksonlewis.com
Ross.Serena@jacksonlewis.com
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which sent notification to all parties of record.

*/s/Kenneth M. Wentz III*

4891-7070-1985, v. 5

17

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| JACKIE DAMON,<br>    Plaintiff,<br><br>v.<br><br>NAVSAV HOLDINGS, LLC,<br>    Defendant. | Case No. 8:23-cv-351<br><br>**DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |

COMES NOW NavSav Holdings, LLC, ("NavSav"), through its undersigned counsel, and under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404, moves this Court for an Order dismissing the Complaint filed by Plaintiff Jackie Damon ("Plaintiff") for improper venue, or, in the alternative, for an Order transferring this case to the United States District Court for the Eastern District of Texas, Beaumont Division.

The factual and legal bases for NavSav's Motion are detailed in its contemporaneously filed Brief in Support of this Motion. In summary, Plaintiff's suit centers on her former employment with NavSav in Iowa and the enforceability of nonsolicitation covenants and other obligations she undertook during her employment. But Plaintiff's NavSav agreement contains an exclusive forum selection clause placing venue for any employment-related dispute in the State of Texas, where NavSav is headquartered and where it maintains its principal place of business. Accordingly, there is a pending nearly identical suit which NavSav filed against Plaintiff in the state courts of Texas, prior to Plaintiff's filing in this matter. That suit is now removed to the United States District Court for the Eastern District of Texas, Beaumont Division (the "Texas Action").

1

WHEREFORE, Defendant requests that the Court enter an Order: (1) dismissing Plaintiff's Complaint and each cause of action asserted in it, without prejudice, for refiling as a counterclaim in the first-filed Texas Action; or, in the alternative, for an order transferring this suit to the United States District Court for the Eastern District of Texas, Beaumont Division; (2) granting to NavSav its attorneys' fees, costs, and expenses incurred defending the Complaint; and (3) for any other relief that this Court deems just and equitable.

DATED: August 16, 2023.

NAVSAV HOLDINGS, LLC,
Defendant,

*/s/Quinn R. Eaton*
Kenneth M. Wentz, III # 23580
Quinn R. Eaton # 26318
JACKSON LEWIS P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
(402) 391-1991
Kenneth.Wentz@jacksonlewis.com
Quinn.Eaton@jacksonlewis.com

**ATTORNEYS FOR DEFENDANT**

4881-0470-7959, v. 1

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| JACKIE DAMON,<br> Plaintiff,<br><br>v.<br><br>NAVSAV HOLDINGS, LLC,<br> Defendant. | Case No. 8:23-cv-351<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |

NavSav Holdings, LLC, ("NavSav"), through its undersigned counsel, submits this Brief in Support of Its Motion to Dismiss or In the Alternative, Motion to Transfer Venue.

## I.      INTRODUCTION

NavSav formerly employed Plaintiff Jackie Damon ("Plaintiff") in the State of Iowa. Plaintiff signed several agreements pertaining to her post-employment conduct, including nonsolicitation covenants and other obligations. The agreement which Plaintiff places at issue here contains an exclusive forum selection clause placing venue for any employment-related dispute in the State of Texas, where NavSav is formed and maintains its principal place of business.

NavSav filed a suit against Plaintiff in the state courts of Texas nearly identical to the present suit. That suit is now removed the Texas suit to the United States District Court for the Eastern District of Texas (the "Texas Action"). After NavSav sued Plaintiff in Texas, Plaintiff then brought this suit in an improper venue – Nebraska state court; the Texas Action is the proper venue based on Plaintiff's consent to exclusive jurisdiction and venue in Texas. This action must be dismissed or transferred to Texas.

## II.      FACTS

NavSav is in the business of selling insurance products throughout the United States with its principal office located in Jefferson County, Texas. *See* Decl. of Dan Headlee, Exh. 1 to Index

1

of Evidence, at ¶ 6; Complaint at ¶ 4. Plaintiff accepted employment with Loring & Company out of Omaha, Nebraska ("Universal") in July 2014. Compl. ¶ 8. Loring & Company changed its name to Universal Group, Ltd. ("Universal") in September 2015. *Id.* ¶ 10.  NavSav purchased the assets (i.e. insurance policies) of Universal on or about April 14, 2022, from Dan Headlee. Exh. 1 at ¶ 5. As part of that purchase, Universal Group, Ltd. assigned to Defendant all right, title, and interest to non-competition, confidentiality, non-disclosure and other employee restrictive covenants held by Universal Group, Ltd. Exh. 8 at ¶ 8; Exh. 3.

Plaintiff executed agreements which Universal Group, Ltd. assigned to NavSav. Exh. 1 at ¶¶ 10-11; Exh. 3-5. Plaintiff's assigned agreements included a Proprietary Information Agreement ("PI Agreement") and a separate customer non-solicitation agreement ("Nonsolicitation Agreement") that included the following provision:

> 6. <u>Noncompetition for Certain Universal Group Customers</u>.  Upon termination of employment hereunder, either voluntary or involuntarily, and for whatever reason,  Employee agrees that for a period of one (1) year following such termination,  he will not, without the written consent of Universal Group, directly or indirectly, solicit or accept any business as described in paragraph 3. hereof, or perform any of the services so described, for any Universal Group Customers with whom he has had business or personal relations during the term of this Agreement.

Exh. 5 at ¶ 6.

Plaintiff executed a Non-Competition, Non-Solicitation, Confidential, and Non-Disclosure Agreement (hereinafter "April Agreement") with NavSav on or about April 18, 2022. In the April Agreement, Plaintiff specifically and in writing, agreed to the following:

> **4(a). <u>Covenant Not to Compete; Area Restriction</u>**
> [Defendant] agrees that [he/she] will not . . . engage, participate, be employed by, be an agent of or manager for, be a producer for, or own an interest in any business in competition with the business of [NavSav] for a period of **one (1) year** from the date of [Defendant's] last date of employment with NavSav, and within a **five (5) mile radius of** [Defendant's] primary office location during [Defendant's] employment . . . [Defendant] cannot open or work for an insurance agency that is **both within the five (5) mile radius <u>and</u> within one (1) year of employment**.
>
> **4(b). <u>Covenant Not to Solicit; Customers</u>**

2

[Defendant] agrees that [he/she] will not . . . solicit or attempt to solicit, the transfer of any customers or policies, cancellation of customers or policies or writing of new insurance policies for any customer that is part of any book of business owned by NavSav or a NavSav related or affiliated entity, or divert (or attempt to divert) any customer that is a part of any book or business owned by NavSav or a NavSav related or affiliated entity from continuing to do business with [NavSav] for a period of three (3) years from [Defendant's] last date of employment with [NavSav].

Dkt. 1-1 at 29-37 (Exh. A to Complaint).

Among other things, Plaintiff further agreed to the following:

(1)     That she would be exposed to confidential information of NavSav which includes, but is not limited to, customer lists and customer information.

(2)     Plaintiff agreed to keep this confidential information in the "strictest confidence." Plaintiff agreed not to disclose such information to anyone outside of the NavSav.

(3)     Plaintiff further agreed to maintain the confidentiality and security of the confidential information even after employment ended for any reason.

(4)     Plaintiff further agreed to indemnify NavSav against any and all losses, damages, claims, or expenses incurred or suffered by NavSav as a result of her breach of the Non-Disclosure.

(5)     There is no time restriction in the Non-Disclosure/Confidentiality provision of the Agreement.

*Id.*

Without Plaintiff signing the April Agreement, NavSav would not have retained her as an employee from Universal, nor would it have given her access to NavSav customers or confidential information including as pricing, contract terms, and other information that is only available to NavSav employees. Exh. 1 at ¶ 14.

Plaintiff worked as an Iowa employee for NavSav – she was located in Iowa, is an Iowa resident, with Iowa taxes withheld. Exh. 1 at ¶ 15; *see also* Dkt. 4, Motion, at p. 6-7.

Plaintiff voluntarily resigned from NavSav, with her last day on or about June 16, 2023. Exh. 1 at ¶ 15.

3

Plaintiff is now employed by Unico Group, Inc. ("Unico"), a NavSav competitor. Exh. 1 at ¶ 16. After Plaintiff, Roach, and Beber submitted their two weeks' notice of resignation (they resigned in unison):

- Beber hired legal counsel prior to his last day of employment to attempt a "buy-out" of his book of business and an attempt to cancel the post-employment restrictive covenants of Beber, Roach, and Plaintiff. During that attempted negotiation, Beber's representative (who is the same counsel as Plaintiff here) made various admissions in which Beber asserted that "NavSav will be unable to keep the commercial lines customers after they learn that Cody Roach, Jackie Damon, and Austin Beber have resigned from NavSav. So, NavSav's additional ROI will quickly go to zero." This admission asserts that Plaintiff, Roach and Beber intended on soliciting and taking all of the commercial lines business of NavSav, as well as providing evidence of financial harm to NavSav who just purchased this book of business; and

- Plaintiff, Roach and Beber announced their new employment with Unico Group on social media. The announcement states that Plaintiff, Roach and Beber will be concentrating on "building tailored insurance solutions within the auto dealing, towing and auto, and auto after-market industry across Nebraska." These are NavSav's customers with which Plaintiff, Roach and Beber had personal contacts and dealings while employed with NavSav.

Exh. 1 at ¶ 17.

NavSav filed a Petition against Plaintiff, Beber, Roach, and Unico (the new employer of Plaintiff, Beber, and Roach, and a competitor of NavSav) on June 26, 2023, in Texas. On July 6, 2023, the Texas court granted Plaintiff's Motion for Temporary Restraining Order, and issued a temporary restraining order against Plaintiff, Beber, and Damon. Dkt. 1-1 in Case No. 8:23-cv-00325 at 149-152. That restraining order, originally set to expire on July 17, 2023, was extended through August 1, 2023. Dkt. 1-1 in Case No. 8:23-cv-00325 at 154.

4

NavSav's Petition, pursuant to Texas law on service of process of out-of-state defendants, was served on Texas's Secretary of State on July 7, 2023.[1] Plaintiff did not file this action in Nebraska until July 7, 2023, after the filing of the Texas Action. (See Compl.).

Unico Group, Inc. removed the Texas Action state case to the United States District Court for the Eastern District of Texas on July 30, 2023. Unico Group, Inc.'s Notice of Removal represented that Plaintiff, Beber, and Roach each consented to Unico Group, Inc.'s removal. As of July 24, 2023, there were conflicting restraining orders between the Texas and Nebraska courts. As demonstrated more fully in NavSav's resistance to Plaintiff's motion for preliminary injunction, Plaintiff violated the Texas court's order, whereas NavSav has complied with all applicable orders.

### III.   LEGAL STANDARD

Once a defendant has challenged venue, the burden is on the plaintiff to establish that venue is proper. *Cohen v. Newsweek, Inc.*, 312 F.2d 76, 78 (8th Cir. 1963). The Court must presume that the parties' forum selection clause is valid and should transfer to the agreed-upon venue. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991); *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 973 (8th Cir. 2012). Forum selection clauses should be given controlling weight and be enforced in all but "exceptional cases" or "extraordinary circumstances." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 59-61 (2013). The party opposing application of a forum selection clause bears the burden of proving it unenforceable. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013).

---

[1] "Under Texas law, a non-resident of Texas may be served through the Texas Secretary of State." *Madden Bolt Corporation v. Glen Martin Engineering*, CIVIL ACTION No. H-08-3214, at *6 (S.D. Tex. Feb. 26, 2009) (citing Tex. Civ. Prac. Rem. Code § 17.026(a)). "Fed.R.Civ.P. 4(e) permits service of process on a non-resident defendant pursuant to state statute." *Kervin v. Red River Ski Area, Inc.*, 711 F. Supp. 1383, 1386 (E.D. Tex. 1989).

5

## IV.   ARGUMENT

### A. Plaintiff's Suit is Advanced in an Improper Venue and Must be Dismissed

The court should dismiss this action based on improper venue. A Rule 12(b)(3) motion to dismiss is the means for seeking dismissal of an action when venue is improper, and the remedy is dismissal. Fed. R. Civ. P. 12; *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013); *City of Neb. v. Baseline Eng'g Corp.*, 867 F.3d 875, 880 (8th Cir. 2017).

The April Agreement signed by Plaintiff demands that "exclusive jurisdiction and venue" of disputes relating to the Agreement be heard in Jefferson County, Texas, that the parties waive any other venue to which they may be entitled, and that venue in Jefferson County, Texas is "mandatory[.]" (Amd. Compl., Ex. A, § 18) (emphasis in original). Thus, Plaintiff has waived any claim to rely on a basis of venue in 28 U.S.C. § 1391, and venue is improper before this Court.

### B. If Plaintiff's Action is not Dismissed, it Should be Transferred to Texas Due to the April Agreement's Forum Selection Clause

#### 1. The Forum Selection Clause is Valid

Under 28 U.S.C. § 1406(a), when venue is improper, the court must dismiss the action, or if it is in the interest of justice, transfer the action to a proper venue. 28 U.S.C. § 1406(a); *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). When the parties have agreed to a valid forum-selection clause, the court should transfer the case to the specified forum, absent extraordinary circumstances. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 61-64 (2013). Forum selection clauses are **presumed valid and enforceable** in determining the proper venue, including as to whether to transfer venue. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991); *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 753 (8th Cir. 1999). The parties agreed to a valid, applicable forum

6

selection clause that requires litigation in the transferee district. This nullifies any deference to Plaintiff's chosen forum and requires transfer. There is already a preexisting suit in the proper venue in which Plaintiff may advance his claims. *See, e.g., U.S. Fire Ins. Co. v. Goodyear Tire Rubber*, 920 F.2d 487, 488-89 (8th Cir. 1990); *Nat'l Indem. Co. v. TransAtlantic Reinsurance Co.*, 13 F. Supp. 3d 992, 998 (D. Neb. 2014); *Williston Basin I.S. Pipeline v. Sheehan Pipe Line Const*, 316 F. Supp. 2d 864, 867 (D.N.D. 2004); Fed. R. Civ. P. 13(a)(1). Forum selection clauses should be given controlling weight and be enforced in all but "exceptional cases" or "extraordinary circumstances." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 59-61 (2013).

It is Plaintiff's burden as the party opposing application of a forum selection clause to prove it is unenforceable. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). She has failed to meet this burden. The only objection Plaintiff raises in her Complaint to enforcement of the forum selection clause is a putative lack of consideration, but this assertion falls short. Plaintiff makes note that she was presented with the April Agreement "after [his] at-will employment had already begun[,]" (Compl., ¶ 20), in an apparent attempt to vitiate continued employment as consideration. Yet NavSav would not have retained Plaintiff's employment after its acquisition of Universal without execution of the Nonsolicit Agreement, nor would it have given her access to NavSav customers or confidential information including as pricing, contract terms, and other information that is only available to NavSav employees. Exh. 1 at ¶ 14. "Generally, trade secrets, confidential information, and goodwill are reasonably related to an interest worthy of protection and therefore are sufficient consideration for a noncompete agreement." *Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*, No. 6:16-CV-298-RWS-KNM, 2016 WL 7634050, at *3 (E.D. Tex. Dec. 2, 2016), *report and recommendation adopted*, No. 6:16-CV-

7

298-RWS-KNM, 2017 WL 26083 (E.D. Tex. Jan. 3, 2017) (citing *Marsh*, 354. S.W.3d at 775). Thus, sufficient consideration exists for Plaintiff's April Agreement.

Additionally, even without more, NavSav's employment of Plaintiff for over a year after Plaintiff signed the agreement provided Plaintiff with sufficient consideration. Plaintiff accepted the terms of the agreement, and then accepted the benefits of employment – including earning over $68,000 in compensation, additional benefits, and being given access to NavSav's property, information, and trade secrets, all of which would not have been provided without Plaintiff signing the agreement. Not only does this constitute sufficient consideration in Nebraska, but Plaintiff's acceptance of those benefits puts Plaintiff in a position to be estopped from now arguing otherwise. *See Securities Acceptance Corp. v. Brown*, 171 Neb. 406, 416 (Neb. 1960) ("Having received the benefits accruing to him from his execution of the contract for almost 7 years, Brown is not now in a position, after his breach thereof, to ask a court of equity to find such agreement void because of want of consideration. We also think Brown is estopped from doing so…").

### 2. Plaintiff's Iowa Employment Vitiates Any Argument Against Transfer

NavSav expects that Plaintiff will seek to blur the question of forum selection with that of choice of law. It is clear from her pleadings that she maintains Nebraska law must apply to this dispute, but this is a separate question from venue. Nebraska and Texas follow the same choice-of-law analysis. *See, e.g., Erickson v. U-Haul Internat*, 278 Neb. 18, 25 (Neb. 2009) ("In choice-of-law determinations, we often seek guidance from the Restatement (Second) of Conflict of Laws."); *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) ("Since 1979, this Court has applied the Restatement's "most significant relationship" test to decide choice of law issues.") (citing the Restatement (Second) of Conflict of Laws).

Thus, if Plaintiff seeks to argue that the choice-of-law provision within the April Agreement is invalid or that Nebraska law should apply despite the parties' agreement on Texas law, it may make that argument in Texas, under the same choice-of-laws framework that a Nebraska court would apply. Any attempt to conflate these issues and deny venue on this basis is improper. The only applicable question here is whether Plaintiff has met her burden of demonstrating that the *exclusive Texas venue provision* is invalid. She has not. Thus, if this Court does not dismiss this action in favor of the pending Texas Action, it should transfer it to the United States District Court for the Eastern District of Texas, Beaumont Division.

Plaintiff's attempt to attack the Nebraska venue provision or application of Nebraska law is further meritless given her differing circumstances from Roach or Beber. Beber and Roach attempt to argue that Nebraska substantive law should not apply because they were employed in Nebraska and their agreements allegedly violate Nebraska law. While these assertions are still irrelevant to the question of *venue* and NavSav disputes these arguments, Plaintiff cannot even make such an argument in the first instance.

To avoid application of Texas law, Plaintiff has the burden to show that Nebraska has a materially greater interest in this issue. *DCS Sanitation Mgmt, Inc. v. Castillo*, 435 F.3d 892, 896 (8th Cir. 2006). The Restatement proffers several factors to consider: (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. § 188(2)(a)-(e) Restatement (Second) of Conflict of Laws. Here, Plaintiff is an Iowa employee and NavSav is a Texas company; Nebraska is not the answer for a single of these factors and has no interest in this dispute.

9

The place of contracting here is Texas or Iowa. The "place of contracting" is the "place where occurred the last act necessary … to give the contract binding effect." Restatement (Second) Conflict of Laws at § 188 cmt. e. Plaintiff executed her respective Agreement in Iowa. Exh. 2 at ¶ 9. NavSav executed the Agreement in Texas. Thus, Nebraska has no role here.

The place of negotiation is Texas or Iowa. The place of negotiation is "of less importance when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone." *Id*. Here, any negotiations occurred between NavSav in Texas and Plaintiff in Iowa. Nebraska is similarly nowhere here.

The place of performance is not Nebraska. Under the Restatement, the "place of performance" is the state where performance under the contract is to occur. Restatement (Second) Conflict of Laws § 188 cmt. e. Here, Plaintiff is based in Iowa. Exh. 2 at ¶ 15. Plaintiff services customers from Iowa, regardless of customer location. Exh. 1 at ¶ 15. Plaintiff did this with NavSav, and Plaintiff is continuing to do this with Unico. Thus, the place of performance is certainly not Nebraska.

Moreover, the Texas Supreme Court recognizes the interests a state like Texas—home to many of the world's largest corporations—has in preserving a company's ability to maintain uniformity in its agreements with employees. *See Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 329-30 Tex. 2014. In recognizing a shift in paradigm, the *Drennen* court announced that Texas "public policy has shifted from a patriarchal one in which we valued uniform treatment of Texas employees from one employer to the next above all else, to one in which we also value the ability of a company to maintain uniformity in its employment contracts across all employees, whether the individual employee reside in Texas or New York." *Id*. at 330. NavSav is a Texas limited

10

liability company doing business across the country and shares the interests in the uniform application of its laws despite multiple states where its employees live. Texas' interests in this dispute are significant, and Nebraska has no interest at all in a dispute between a former Iowa employee, still performing services in Iowa, and a Texas company.

Plaintiff cannot carry her burden to demonstrate that Nebraska has any interest – let alone a materially greater interest – as necessary to circumvent the Texas choice of law provision she agreed to, and Texas law should apply.

## V.   CONCLUSION

For the reasons set forth above, Defendant respectfully requests an Order from this Court (1) dismissing Plaintiff's Complaint and each cause of action asserted in it, without prejudice for refiling as a counterclaim in the Texas Action; or, in the alternative, for an order transferring this suit to the United States District Court for the Eastern District of Texas, Beaumont Division; (2) granting to NavSav its attorneys' fees, costs, and expenses incurred defending the Complaint; and (3) for any other relief that this Court deems just and equitable.

DATED: August 16, 2023.

NAVSAV HOLDINGS, LLC,
Defendant,
*/s/Quinn R. Eaton*
Kenneth M. Wentz, III # 23580
Quinn R. Eaton # 26318
JACKSON LEWIS P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
(402) 391-1991
Kenneth.Wentz@jacksonlewis.com
Quinn.Eaton@jacksonlewis.com

**ATTORNEYS FOR DEFENDANT**

11

## CERTIFICATE OF COMPLIANCE

Under NECivR 7.1(d)(3), I, Quinn R. Eaton, hereby certify that Defendant NavSav Holdings, LLC's Brief in Support of Motion to Dismiss, or in the Alternative, Motion to Transfer Venue, complies with the word count limitation provided under the Rule and further certify that the word count function was applied to include all text, including the captions, headings, footnotes, and quotations. This Brief was prepared using Microsoft Word Version 2302 and contains a combined 3,496 words.

*/s/ Quinn R. Eaton*
Quinn R. Eaton

4881-9056-1655, v. 2

12

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| JACKIE DAMON, | CASE NO: 8:23-cv-00351 |
| Plaintiff, | |
| v. | **PLAINTIFF'S BRIEF IN OPPOSITION DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |
| NAVSAV HOLDINGS, LLC, | |
| Defendant. | |

Plaintiff Jackie Damon, by and through her respective counsel, opposes Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue and requests that the Court deny the motion in its entirety.

## I.    INTRODUCTION

On August 22, 2023, the Court issued its memorandum and order granting a preliminary injunction in favor of Damon, finding that Nebraska law applied to the April Agreements and the Universal Agreements, finding that the restrictive covenants in those agreements are not enforceable, and enjoining NavSav from taking any further actions to enforce the noncompetition and non-solicitation covenants in those agreements and from making any further submissions, filings, or appearances in the case *NavSav Holdings, LLC v. Beber, Roach, Damon, and Unico Group, Inc.*, Case No. 1:23-cv-290 pending in the United States District Court for the Eastern District of Texas. Filing No. 22 (the "Texas Case"). This Court quoted the "exclusive" and "mandatory" jurisdiction and venue provisions in section 18 of the April Agreements, and this Court declined to apply those provisions as it asserted jurisdiction over the parties in this venue, and ordered no further submissions, filings or appearances in the Texas Case.

Despite this Court's unambiguous orders, NavSav made a subsequent filing in the Texas Case, though with the Texas Court's apparent blessing, but certainly not with the blessing of this Court. *See*, Filing Nos. 31-1 and 31-2. So, NavSav, standing in direct violation of this Court's orders, asks this Court to dismiss this case or to transfer it to the very court where the Court has ordered NavSav not to make any further submissions, filings or appearances. For these reasons alone, NavSav's motion should be denied.

Moreover, NavSav's motion to dismiss is procedurally improper and can be denied without addressing its merits. NavSav seeks to enforce a choice of forum provision in the April Agreements between NavSav and Damon in favor of a Texas forum. However, the case that NavSav cites in support of its position that it has properly brought a Rule 12(b)(3) motion states: "the Supreme Court has expressly held that parties may not enforce forum-selection clauses through Rule 12(b)(3) motions to dismiss." *City of Benkelman, Nebraska v. Baseline Eng'g Corp.*, 867 F.3d 875, 880 (8th Cir. 2017) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013)).

Consequently, the only motion that is procedurally compliant before the Court is the motion to transfer under 28 U.S.C. § 1404.[1] A motion to transfer requests transfer of a case to another ***federal*** district court, which NavSav claims should be the Texas Case Court. However, NavSav has taken the position that it would be improper for any federal court to exercise jurisdiction over the case. NavSav claims that the April Agreements require this suit to be maintained only in "District State Court located in Jefferson County, Texas". *See* Filing No. 31-2 at ¶¶ 42-46. Thus, NavSav contends transfer would be improper because the Court can transfer

---

[1] Plaintiff notes that NavSav's motion seeks relief under 28 U.S.C. 1404 so Plaintiff responds to the motion accordingly. However, NavSav's brief references relief under 28 U.S.C. 1406.

only to "any other district or division where it might have been brought or to any district or division to which all parties have consented." *See* 28 U.S.C. § 1404. NavSav cannot have it both ways.

NavSav's pending appeal with the Eighth Circuit Court of Appeals would significantly complicate any potential transfer of this case to another Court and the appeal alone makes this case very different from other situations in which a party seeks transfer based on a choice of forum clause. This Court has substantial knowledge concerning the underlying facts and has undertaken thoughtful analysis on the legal issues in play in this matter; the interests of efficiency and judicial economy weigh heavily toward denying dismissal and transfer.

Finally, the choice of forum clause is not enforceable against Damon, which eliminates NavSav's only arguments for dismissal or transfer. The April Agreements fail for lack of consideration, making the entire agreement including the choice of forum clause unenforceable. That issue was previously briefed and is incorporated here by reference. *See* Filing No. 4 at 14-15. Nebraska law – not Texas law – applies to the contract and the question of whether the choice of forum clause is enforceable. First, a trial in Texas would be substantially less convenient than in Omaha, Nebraska because the relevant persons are located here, including some of NavSav's potential witnesses and a substantial majority of the customers that left NavSav. There is no dispute that it would be much less convenient for the vast majority of witnesses in this case to travel the 900+ miles to Beaumont, Texas than to appear in Omaha for trial. Second, the April Agreements were obtained *after* Damon started her employment with NavSav, without consideration, and as NavSav has said – if Damon didn't sign the April Agreements, she would have been fired. Putting someone's livelihood on the line for signature of an agreement that was not negotiated and is

3

completely one-sided is a textbook example of an abuse of economic power. Finally, it would be unreasonable to enforce the agreement given the posture of this case, its significant progress to date, and the fact that it would likely cause piecemeal litigation on the relevant issues.

## II.    BACKGROUND

Damon recognizes that the Court is familiar with the background for this case as it has already received briefing, evidence, and argument on the background to this case and issues relating to choice of law in connection with the preliminary injunction that the Court issued on August 22, 2023. Damon refers the Court to the relevant facts and evidence filed in support of her motion for a preliminary injunction and to relevant evidence offered by Defendant as background.

## III.    ARGUMENT

### A.  NavSav's Motion is Procedurally Improper

Black letter law from the United States Supreme Court dooms NavSav's Motion to Dismiss. In *Atl. Marine Constr. Co.*, the Supreme Court stated:

> Atlantic Marine contends that a party may enforce a forum-selection clause by seeking dismissal of the suit under § 1406(a) and Rule 12(b)(3). We disagree. Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause.

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). NavSav's brief citing this case, argues that venue is "improper." Filing No. 11 at 5. NavSav is wrong; "the Supreme Court has expressly held that parties may not enforce forum-selection clauses through Rule 12(b)(3) motions to dismiss." *City of Benkelman, Nebraska*, 867 F.3d at 880. To the extent that NavSav requests transfer under 28 U.S.C. § 1406(a) (*See* Filing No. 11 at 6-8),

4

NavSav's request to transfer is also improper as the Supreme Court has made it clear that a motion to transfer under 28 U.S.C. § 1406(a) is not the proper method to attempt to enforce a choice of forum clause.

### B.  Nebraska law applies to the April Agreements.

"Simplicity argues for determining the validity and meaning of a forum selection clause," at least when "interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears." *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007). As a result, to determine whether the choice of forum provision in the April Agreements are valid, even if supported by consideration, the Court must determine what substantive law will apply to the April Agreements as a whole.

Nebraska law governs the April Agreements (despite the presence of a Texas choice-of-law clause) because Nebraska is the situs of the parties' relationship and the April Agreements were for personal services predominantly performed in Nebraska, with none performed or assigned to be performed in Texas. Because there is an actual conflict between application of Texas and Nebraska law to this dispute, the Court must determine which jurisdiction's law applies. The Court undertook this analysis in its order issuing a preliminary injunction in Damon's favor. Filing No. 21 at 17-28. The facts and law are unchanged since the Court issued its decision approximately one month ago, so the outcome also should be unchanged. Nebraska law applies to the April Agreements.

The conflict-of-law rules for the state in which this Court sits apply. *See, e.g., Inacom Corp. v. Sears, Roebuck & Co.,* 254 F.3d 683,687 (8th Cir. 2001). The Restatement (Second) of Conflict of Laws governs in Nebraska. *Am. Nat. Bank v. Medved,* 801 N.W.2d 230, 237

5

(Neb. 2011); *see also Inacom Corp.,* 254 F.3d at 687. In general, Nebraska courts honor choice-of-law clauses. *Medved,* 801 N.W.2d at 236. However, section 187 of the Restatement (Second) of Conflict of Laws, as quoted in Damon's Motion for a Temporary Restraining Order must be considered. Restatement (Second) of Conflict of Laws § 187 (1971); *see also Medved,* 801 N.W.2d at 237 (adopting section 187); *See DCS Sanitation Mgmt., Inc. v. Castillo,* 435 F.3d 892, 896 (8th Cir. 2006).

Section 187(1) does not apply because, as cited below, Nebraska Courts lack the power to reform unenforceable restrictive covenants. The exceptions under section 187(2) apply. *Castillo,* 435 F.3d at 896. Nebraska has a more substantial and materially greater interest in enforcing the agreement between Beber and NavSav. *See id.; see also Hill v. Antioch Co.,* No. 8:09CV275, 2009 WL 3838251, at *4 (D. Neb. Nov. 17, 2009). In the context of a restrictive covenant involving a contract for the rendition of services, there is a presumption that the state where "a major portion" of the services will be rendered, is the state with the most significant relationship. *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 709, 625 N.W.2d 197, 203 (2001) (citing Restatement (Second) of Conflict of Laws § 196). In this case, Nebraska has a greater interest in this NavSav Agreement. The only connection to Texas is that NavSav is incorporated there. In contrast, the connection to Nebraska is substantial and materially greater for the reasons and Nebraska connections stated above. Moreover, NavSav hired Damon to assist NavSav's operations related to insurance policies sold in Nebraska and Iowa, but not in Texas. NavSav never assigned Damon to an office in Texas or to territories in Texas. Throughout her employment with NavSav, Damon was never assigned to solicit customers located in Texas, and Damon never solicited or procured customers in Texas. Instead, the vast majority of the policies Damon worked on for NavSav were for policyholders located in Nebraska and Iowa.

6

Nebraska and Texas law are vastly different as applied to post-employment restrictive covenants. Nebraska law provides that such a covenant "is valid only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and [had] personal contact." *Prof'l Bus. Servs. Co. v. Rosno,* 268 Neb. 99, 110-11, 680 N.W.2d 176, 185 (2004) (quotation omitted). Moreover, if such a covenant is overbroad, the covenant cannot be reformed or enforced to any extent. By contrast, Texas law does not require that "the former employee actually did business and [had] personal contact" with the former employer's clients or accounts. *See Molina v. Air Starter Components, Inc.*, No. 01-03-00175-CV, 2004 WL 1277491, at *9 (Tex. App. June 10, 2004); Tex. Bus. & Com. Code Ann. § 15.51(c), requiring that a Texas "court shall reform the covenant to the extent necessary . . . .").

The Eighth Circuit Court of Appeals has addressed this very issue, applying Nebraska law and declining to enforce a provision of an employment contract making Iowa law applicable to the agreement on the grounds that Iowa law would be contrary to fundamental public policy of Nebraska. *Rain and Hail Ins. Service, Inc. v. Casper*, 902 F.2d 699 (8th Cir. 1990). The Eighth Circuit Court of Appeals refused to enforce a choice of Iowa law contractual provision for an employee working in Nebraska, finding that

> [a]lthough Nebraska law generally allows parties to choose which jurisdiction's law will apply in a contract dispute (here Iowa law), the court nevertheless applied Nebraska law, reasoning that application of Iowa law would be contrary to a fundamental policy of Nebraska. Under Nebraska law, contracts in restraint of trade must be no greater than reasonably necessary to protect the employer in some legitimate interest.

*Rain and Hail Ins. Service, Inc. v. Casper*, 902 F.2d at 700-01 (citing *Polly v. Ray D. Hilderman Co.*, 225 Neb. 662, 407 N.W.2d 751, 754 (1987)).

7

Application of Nebraska law now is critical to prevent a Nebraska court from being forced to grant an injunction or enforce a judgment that does not adhere to Nebraska law and public policy. And this is not a close call. Nebraska law has the most significant relationship to the contract and the parties. As a result, Nebraska law applies to this case despite the presence of a Texas choice-of-law provision in the April Agreements.

### C. Under Nebraska Rev. Stat. § 25-415, the choice of forum provision in the April Agreements is unenforceable.

Under Nebraska law, which governs the April Agreements:

> If the parties have agreed in writing that an action on a controversy shall be brought only in another state and it is brought in a court of this state, the court will dismiss or stay the action, as appropriate, unless (1) the court is required by statute to entertain the action; (2) the plaintiff cannot secure effective relief in the other state, for reasons other than delay in bringing the action; (3) the other state would be a substantially less convenient place for the trial of the action than this state; (4) the agreement as to the place of the action was obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means; or (5) it would for some other reason be unfair or unreasonable to enforce the agreement.

NEB. REV. STAT. § 25-415.

While choice of forum clauses are enforceable generally, the circumstances before the Court do not warrant enforcement of the April Agreements or the choice of forum clause within the April Agreements. One of the few Nebraska cases to apply Neb. Rev. Stat. § 25-415 addressed the intersection of this statute and public policy considerations head on:

> Can we therefore say that a provision of a contract enacted pursuant to a statute adopted by the Legislature of the State of Nebraska is contrary to public policy? We believe that, under generally recognized rules applicable to cases of this nature, we cannot. What is public policy must be determined from a consideration of the federal and state Constitutions, the laws, the decisions of the courts, and the course of administration, and not by the varying opinions of laymen, lawyers, or judges.

*Haakinson & Beaty Co. v. Inland Ins. Co.*, 216 Neb. 426, 429, 344 N.W.2d 454, 457 (1984). In that case, the Nebraska Supreme Court declined to find a choice of forum clause unenforceable

8

because the underlying contract (a bond) conformed to Nebraska statutes. The Nebraska Supreme Court also recognized: "By granting to the trial court the opportunity to refuse to dismiss the action where facts consistent with the limitations of § 25-415 exist, the courts are not denied their inherent authority to consider appropriate matters presented to them." *Id.*

This is one of those situations. The Court has already determined that Nebraska law applies to the April Agreements and provisions in the April Agreements violate Nebraska public policy. Filing No. 21 at 27-28. "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L. Ed. 2d 513 (1972). This is a case that involves people and conduct that are almost wholly in Nebraska and touches upon the State of Nebraska's clear position regarding what restrictions may be placed on employees working in Nebraska.

Moreover, the factors outlined in Neb. Rev. Stat. § 25-415 weigh in favor of the Court denying a motion to dismiss (or transfer). First, trial in Texas would be a substantially less convenient than in Nebraska. There is ample evidence in the record as to this point. Most of the customers allegedly being solicited who NavSav would need to call as witnesses are in Nebraska. Beber and Roach are in Nebraska and Damon is in neighboring Iowa. Even NavSav, who makes much of the fact that it is Texas-based, maintains a Nebraska office, alleges the action arises out of conduct in that office, and has submitted evidence through Dan Headlee, the former owner of Universal Group, who Damon believes to still be a Nebraska resident. It should go without saying that holding a trial more than 900 miles away from the home county for the vast majority of the witnesses at trial is "substantially less convenient." Second, there was a clear abuse of economic power by NavSav in obtaining the April Agreements. NavSav's position in this case is that it would

9

have fired Damon if she did not sign the April Agreements, pitting her job against a one-sided boilerplate document presented after she already started working for NavSav. *See* Dan Headlee Dec., Filing No. 12-1 ¶ 14. Third, it would be both unreasonable and unfair to enforce the choice of forum provision against Damon because the substance of the agreement is unenforceable and there has been substantial progress in this case (including a pending appeal).

###### D.  Transfer of this case to Texas is not proper or appropriate.

In the alternative to its motion to dismiss, NavSav asks the Court to transfer this case to the United States District Court for the Eastern District of Texas, Beaumont Division. That request is based on 28 U.S.C. §1404 which, as NavSav notes, turns on the enforceability of the choice of forum clause in the April Agreements. NavSav's brief mistakenly argues for application of 28 U.S.C. §1406 and provides a rationale for the Court to transfer under 28 U.S.C. §1406. For the reasons stated above, the April Agreements are not enforceable under Nebraska law. Without the April Agreements, there is absolutely no basis to transfer cases brought in Nebraska, by Nebraska employees, against an entity licensed and registered to business in Nebraska, that concerns conduct in Nebraska, and the ability to engage in lawful competition in Nebraska. This is particularly true when NavSav asks for the Court to transfer the case to a Texas federal court even though NavSav is simultaneously arguing in another court that the Texas federal court does not have jurisdiction over the case. Filing No. 31-2 at ¶¶ 42-26. The Court should reject NavSav's attempt to argue opposite legal positions in two different courts and deny NavSav's request to transfer.

WHEREFORE, for the reasons stated above Plaintiff Jackie Damon respectfully requests that the Court deny Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue in its entirety.

DATED: September 26, 2023.

JACKIE DAMON,  Plaintiff,

By: */s/ Andrew S. Tugan*

Gregory C. Scaglione, #19368
Andrew S. Tugan, #26917
Emily M. Coffey, #27308
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE  68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
Greg.Scaglione@koleyjessen.com
Andrew.Tugan@koleyjessen.com
Emily.Coffey@koleyjessen.com

*Attorneys for Plaintiff.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 26, 2023, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which sent notification of such filing to all CM/ECF participants.

*/s/Andrew S. Tugan*
Andrew S. Tugan

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JACKIE DAMON<br>    Plaintiff,<br><br>v.<br><br>NAVSAV HOLDINGS, LLC,<br>    Defendant. | Case No. 8:23-cv-351<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |

NavSav Holdings, LLC, ("NavSav"), through its undersigned counsel, submits this Reply Brief in Support of Its Motion to Dismiss or In the Alternative, Motion to Transfer Venue.

## I.       INTRODUCTION

Plaintiff's opposition to adhering to her unequivocal consent to jurisdiction in another venue relies entirely on convincing this Court to blur together two separate issues and make findings not currently at-issue. Plaintiff seeks to accelerate a final determination as to the substantive choice of law to apply to the noncompete/solicitation provisions of the April Agreements—while sidestepping the mandatory and exclusive jurisdiction provision that makes this venue improper, regardless of which substantive law applies. Plaintiff relies on *preliminary* determinations of this Court, focused on the merits of enforcement of the April Agreements' noncompete/solicitation provisions. These questions are premature and irrelevant to disposition of the solitary issue presented here: venue.

## IV.       ARGUMENT

### A. Plaintiff Consented to Venue in Texas—Regardless of the Substantive Law

Plaintiff's argument dives immediately into the substantive merits of the case at large - arguing for application of Nebraska law as to noncompete/solicitation covenants. But venue is a matter of procedure, and, as such, governed by federal law. *Hanna v. Plumer*, 380 U.S. 460 (1965).

1

Plaintiff expands the relevant issue beyond its scope by attacking the contract as a whole rather than simply the forum selection provision. The Supreme Court has held that "forum-selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Plaintiff must present a "strong showing" that such a provision should be set aside. *Id.* at 15.

Plaintiff's attempt to make this showing is to return to substantive merits of the case and this Court's preliminary finding as to the enforceability of a noncompete provision in Nebraska. But this analysis sidesteps the relevant issue. In *Fitzgibbons v. Hill-Rom Co.*, a plaintiff similarly sought to conflate separate issues by arguing that because the defendant breached a contract, the forum-selection clause at issue was unenforceable. 2012 U.S. Dist. LEXIS 91289, *5 (D.S.D. June 28, 2012). Yet this Court's sister court noted that "forum-selection clauses are not substantive clauses where the enforceability is destroyed by a material breach. Additionally, it is counterintuitive to require the court to determine whether a contract has been breached and thus is unenforceable prior to determining which forum has jurisdiction over the claim." *Id.* at *6 (citation omitted). While the plaintiff's argument in *Fitzgibbons* was based on an allegedly excused performance due to another party's breach, this argument is analogous to Plaintiff's argument here that alleged substantive unenforceability of a separate provision in the April Agreements somehow renders the forum-selection provision unenforceable. The issues are separate. Plaintiff's attempts to blur them together should not be indulged.

The plaintiff in *Fitzgibbons* similarly attempted to argue that litigation in the forum to which he consented would be inconvenient. But the court held that "the financial inconvenience of litigating in accordance with the forum-selection clause does not bear on the validity or

enforceability of the clause itself." *Id.* at *7. Plaintiff does the same here by attempting to weave the issue of choice-of-law for substantive enforcement of a noncompete into the issue of forum-selection by pointing to the alleged inconvenience of suit in Texas. Defendant's prior briefing addresses the factors that Plaintiff seeks to rely on regarding choice-of-law.[1] Even if considered in this context, those factors are essentially a wash and do not point so convincingly towards Nebraska as Plaintiff would seek to assert.

Once the issue to be decided on this Motion is properly contextualized, the only relevant arguments of Plaintiff consist of allegations that the forum-selection clause is invalid due to alleged inequal bargaining power or lack of consideration. But both such arguments fail. In the context of arbitration—which permits avoidance of arbitration if an arbitration provision is legally unenforceable, 9 U.S.C. § 2—courts routinely reject arguments like those made by Plaintiff. "Mere inequality in bargaining power" does not render a provision unconscionable. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) *see also Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 49 (Ind. App. 2005) ("A standardized contract is not unenforceable merely because of the unequal bargaining power of the parties—there must also be a showing that the contract is unconscionable."). Plaintiff does little else to meet the burden of proving unconscionability other than to generically assert the situation was unfair due to the inequality of bargaining power. But this scenario is true regarding virtually every contract an individual enters into with a business throughout their life, and courts routinely and soundly reject such arguments.

As to the alleged lack of consideration, Defendant's employment of Plaintiff was contingent on agreeing to the April Agreements. Even if not executed prior to beginning

---

[1] *See also Heartland Family Servs. v. Netsmart Techs., Inc.*, 961 F. Supp. 2d 964, 969-70 (D. Neb. 2013) (rejecting argument that state consented to—Illinois—was inconvenient due to 19 witnesses in Nebraska and Iowa, as parties knew at the time of contracting this was likely true, and such considerations did not mean Illinois courts were incapable of performing substantial justice).

employment, this expectation was present at the outset, and Plaintiff's employment would not have continued otherwise. *See, e.g.*, *Chilson v. Retalix USA, Inc.*, 8:07CV101, at \*5 (D. Neb. Oct. 2, 2007); *Medtronic, Inc. v. Gibbons*, 527 F. Supp. 1085, 1093 (D. Minn. 1981); *McNamara v. Yellow Transp*, 570 F.3d 950, 956 (8th Cir. 2009); *Central States Industrial Supply, Inc. v. McCullough*, No. C 02-0052-MWB, at \*37 (N.D. Iowa Sep. 3, 2003). Beyond simply employment and its continuation, Defendant also testified that Plaintiff was given access to confidential information—information she now uses against Defendant—that Defendant would not have provided absent Plaintiff's execution of the April Agreements. The essential elements of a contract were met. Plaintiff's argument otherwise is again simply an improper conflating of the substantive merits of the case—rather than the procedural issue as to whether Plaintiff consented to jurisdiction elsewhere. Plaintiff agreed not to bring suit in this Court; the matter must be dismissed or transferred.

### B.  This Matter Should be Dismissed or Transferred to Texas

Plaintiff argues that Defendant cannot seek a transfer of this matter to the federal courts of Texas while simultaneously arguing that only Texas state court is proper. But this situation is of Plaintiff's own creation. Defendant originally filed suit in the proper state court of Texas, only for Plaintiff to remove it to federal court. Were the matter still in Texas state court, Defendant would simply seek a dismissal from this Court. However, given the circumstances created by Plaintiff, and acknowledging that courts prefer transfer over dismissal, *Heartland*, 961 F. Supp. 2d at 969, Defendant seeks transfer in the alternative.

Once this matter is at least moved back to the proper *state*, the courts there may determine whether state or federal court within that state is proper. This is simply yet another matter of Plaintiff conflating issues and seeking premature legal rulings. The current court hearing this

4

matter in Texas can decide whether state or federal court is proper. Whichever court in Texas retains jurisdiction can *then determine what law applies to this dispute*. As Defendant has noted repeatedly, Plaintiff can still argue for the application of Nebraska law, and Texas courts— applying the same choice-of-law framework as Nebraska—will have the opportunity to decide if Nebraska law should apply. Plaintiff does not lose that argument by a transfer to the proper court. Then, regardless of which law applies, Plaintiff can then still argue against the enforceability of the various substantive provisions at issue in the April Agreements.

All of these questions are issues for a later date.

At hand is whether Plaintiff consented to venue elsewhere: s*he did*. And that consent is enforceable. This matter must be dismissed or transferred.

### V.   CONCLUSION

For the reasons set forth above and in its original motion, Defendant respectfully requests an Order from this Court (1) dismissing Plaintiff's Complaint and each cause of action asserted in it, without prejudice for refiling as a counterclaim in the Texas Action; or, in the alternative, for an order transferring this suit to the United States District Court for the Eastern District of Texas, Beaumont Division; (2) granting to NavSav its attorneys' fees, costs, and expenses incurred defending the Complaint; and (3) for any other relief that this Court deems just and equitable.

DATED: October 10, 2023.

NAVSAV HOLDINGS, LLC,
Defendant,

*/s/Quinn R. Eaton*
Kenneth M. Wentz, III # 23580
Quinn R. Eaton # 26318
JACKSON LEWIS P.C.
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
(402) 391-1991
Kenneth.Wentz@jacksonlewis.com
Quinn.Eaton@jacksonlewis.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF COMPLIANCE

Under NECivR 7.1(d)(3), I, Quinn R. Eaton, hereby certify that Defendant NavSav Holdings, LLC's Reply Brief in Support of Motion to Dismiss, or in the Alternative, Motion to Transfer Venue, complies with the word count limitation provided under the Rule and further certify that the word count function was applied to include all text, including the captions, headings, footnotes, and quotations. This Brief was prepared using Microsoft Word Version 2273 and contains a combined 1,585 words.

*/s/ Quinn R. Eaton*
Quinn R. Eaton

4891-5775-8086, v. 1

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| JACKIE DAMON<br>    Plaintiff,<br><br>v.<br><br>NAVSAV HOLDINGS, LLC,<br>    Defendant. | Case No. 8:23-cv-351<br><br>**DEFENDANT'S ANSWER AND<br>AFFIRMATIVE DEFENSES** |

NavSav Holdings, LLC, ("NavSav"), through its undersigned counsel, submits its Answer and Affirmative Defenses in response to Plaintiff Jackie Damon's ("Damon") Complaint.

**PARTIES JURISDICTION AND VENUE**

1.      Defendant admits that Plaintiff is an individual residing in Iowa. Defendant is without sufficient information to admit/deny the remaining allegations in paragraph 1 of the Complaint, and therefore denies the remaining allegations.

2.      Defendant admits that NavSav is a Texas Limited Liability company with its principal place of business in Beaumont, Texas.

3.      Defendant admits the allegations in paragraph 3 of the Complaint.

4.      Defendant admits the allegations in paragraph 4 of the Complaint.

5.      Defendant lacks sufficient information to admit or deny licensing information regarding Universal Group, Ltd., and therefore denies the same. Defendant admits the remaining allegations in paragraph 5 of the Complaint.

6.      Defendant denies that jurisdiction is proper based on the terms of the agreements signed by Plaintiff, and denies the allegations in paragraph 6 of the Complaint.

7.      Defendant denies that venue is proper based on the terms of the agreements signed by Plaintiff, and denies the allegations in paragraph 7 of the Complaint.

1

8.      Defendant is without sufficient information to admit or deny the allegations in paragraph 8 of the Complaint, and therefore denies the same.

9.      Defendant is without sufficient information to admit or deny the allegations in paragraph 9 of the Complaint, and therefore denies the same.

10.     Defendant is without sufficient information to admit or deny the allegations in paragraph 10 of the Complaint, and therefore denies the same.

11.     Defendant is without sufficient information to admit or deny the allegations in paragraph 11 of the Complaint, and therefore denies the same.

12.     Defendant is without sufficient information to admit or deny the allegations in paragraph 12 of the Complaint and therefore denies the same.

13.     Defendant is without sufficient information to admit or deny the allegations in paragraph 13 of the Complaint and therefore denies the same.

14.     Defendant is without sufficient information to admit or deny the allegations in paragraph 14 of the Complaint, and therefore denies the same.

15.     Defendant denies the allegations in paragraph 15 of the Complaint.

16.     Defendant denies the allegations in paragraph 16 of the Complaint.

17.     Defendant admits that Damon signed employment related agreements. The remainder of paragraph 17 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 17 of the Complaint.

18.     Defendant admits the allegations in paragraph 18 of the Complaint.

19.     Defendant admits that the document attached as Exhibit A to the Complaint appears to be an accurate copy of an agreement signed by Plaintiff. Defendant denies the remaining allegations in paragraph 19 of the Complaint.

20.     Defendant admits that Damon signed employment related agreements. The remainder of paragraph 20 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 20 of the Complaint.

21.     Defendant admits the allegations in paragraph 21 of the Complaint.

22.     Defendant is without sufficient information to admit or deny whether Damon had counsel when she signed the NavSav Agreement and therefore denies the same. Defendant denies the remaining allegations in paragraph 22.

23.     Defendant denies the allegations in paragraph 23 of the Complaint.

24.     Paragraph 24 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 24 of the Complaint.

25.     Paragraph 25 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 25 of the Complaint.

26.     Defendant states that the referenced document speaks for itself.

27.     Defendant states that the referenced document speaks for itself.

28.     Defendant states that the referenced document speaks for itself.

29.     Defendant denies the allegations in paragraph 29 of the Complaint.

30.     Defendant denies the allegations in paragraph 30 of the Complaint.

31.     Defendant denies the allegations in paragraph 31 of the Complaint.

32.     Defendant admits the allegations in paragraph 32 of the Complaint.

33.     Paragraph 33 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 33 of the Complaint.

34.     Defendant admits that June 15, 2023 was Damon's last day of employment. Defendant denies the remaining allegations in paragraph 34 of the Complaint.

35.     Defendant is without sufficient information to admit or deny the allegations in paragraph 35 of the Complaint and therefore denies the same.

36.     Defendant is without sufficient information to admit or deny the allegations in paragraph 36 of the Complaint and therefore denies the same.

37.     Defendant is without sufficient information to admit or deny the allegations in paragraph 37 of the Complaint and therefore denies the same.

38.     Defendant is without sufficient information to admit or deny the allegations in paragraph 38 of the Complaint, and therefore denies the same.

39.     Defendant is without sufficient information to admit or deny the allegations in paragraph 39 of the Complaint, and therefore denies the same.

40.     Defendant is without sufficient information to admit or deny the allegations in paragraph 40 of the Complaint, and therefore denies the same.

41.     Defendant admits its attorneys sent Damon a letter, and Exhibit C to the Complaint is an accurate copy of that letter.  Defendant is without sufficient information to admit or deny the remaining allegations in paragraph 41 of the Complaint, and therefore denies the same.

42.     Defendant admits that the contents of the letter referenced in paragraph 42 of the Complaint speak for itself. Defendant denies the remaining allegations in paragraph 42 of the Complaint.

43.     Paragraph 43 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 43 of the Complaint.

44.     Paragraph 44 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 44 of the Complaint.

45.     Defendant admits the allegations in paragraph 45 of the Complaint.

46.     Defendant admits the allegations in paragraph 46 of the Complaint.

47.     Defendant denies the allegations in paragraph 47 of the Complaint.

48.     Defendant admits the allegations in paragraph 48 of the Complaint.

49.     Defendant admits the allegations in paragraph 49 of the Complaint.

### FIRST CLAIM FOR RELIEF
### DECLARATORY JUDGMENT: PARTS OF THE NAVSAV AGREEMENT ARE INVALID AND UNENFORCEABLE, INCLUDING WITHOUT LIMITATION THE RESTRICTIVE COVENANTS

50.     Defendant incorporates its responses to the previous paragraphs as if fully set forth herein.

51.     Defendant avers that the Statute speaks for itself and admits that paragraph 51 includes an accurate excerpt from part of the cited statute.

52.     Defendant avers that the Statute speaks for itself and admits that paragraph 52 includes an accurate excerpt from part of the cited statute.

53.     The allegations in paragraph 53 of the Complaint contain legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 53 of the Complaint.

54.     Defendant avers that the Statute speaks for itself and admits that paragraph 54 includes an accurate excerpt from part of the cited statute.

55.     Defendant avers that the Statute speaks for itself and admits that paragraph 55 includes an accurate excerpt from part of the cited statute.

56.     Defendant denies the allegations in paragraph 56 of the Complaint.

57.     Paragraph 57 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 57 of the Complaint.

58.     Paragraph 58 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 58 of the Complaint.

59.     Paragraph 59 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 59 of the Complaint.

60.     Paragraph 60 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 60 of the Complaint.

61.     Paragraph 61, including subparts (a) and (b) of the Complaint contain legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 61 including subparts (a) and (b) of the Complaint.

6

62.     Defendant admits employing Damon as an Iowa employee. Defendant denies the remaining allegations in paragraph 62 of the Complaint.

63.     Defendant admits doing business in Nebraska and Iowa. Defendant denies the remaining allegations in paragraph 63 of the Complaint.

64.     Paragraph 64 of the Complaint contain legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 64 of the Complaint.

65.     Paragraph 65 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 65 of the Complaint.

66.     Paragraph 66 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 66 of the Complaint.

67.     Defendant admits that it has authorized agents in Nebraska. The remainder of paragraph 67 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 67 of the Complaint.

68.     Defendant denies that this Court has jurisdiction over the parties based on the agreements signed by Plaintiff. The remainder of paragraph 68 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 68 of the Complaint.

69.     Defendant admits that it conducts business in Nebraska and Iowa and it employed Damon. The remainder of paragraph 69 contains legal conclusions to which no response is required

or made. To the extent a response is required, Defendant denies the allegations in paragraph 69 of the Complaint.

70.     Paragraph 70 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 70 of the Complaint.

71.     Paragraph 71 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 71 of the Complaint.

72.     The quoted section of Defendant's agreement with Plaintiff speaks for itself. The remainder of paragraph 72 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 72 of the Complaint.

73.     Paragraph 73 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 73 of the Complaint.

74.     Defendant denies that Damon is entitled to the relief requested in paragraph 74 of the Complaint.  The remainder of paragraph 74 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 74 of the Complaint.

75.     Defendant avers that the Statute speaks for itself and admits that paragraph 75 includes an accurate excerpt from part of the cited statute.

76.     Defendant denies the allegations in paragraph 76 of the Complaint.

77.     Paragraph 77 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 77 of the Complaint.

78.     Paragraph 78 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 78 of the Complaint.

79.     Paragraph 79 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 79 of the Complaint.

80.     Paragraph 80, including 80(a) and 80(b) of the Complaint contain legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 80, including paragraphs 80(a) and 80(b) of the Complaint.

81.     Paragraph 81 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 81 of the Complaint.

82.     Paragraph 82 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 82 of the Complaint.

83.     Paragraph 83 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 83 of the Complaint.

9

84.     Paragraph 84 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 84 of the Complaint.

85.     Paragraph 85 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 85 of the Complaint.

86.     Paragraph 86 contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 86 of the Complaint.

87.     Paragraph 87 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 87 of the Complaint.

88.     Defendant admits that the referenced agreement is a contract. The remainder of Paragraph 88 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the remaining allegations in paragraph 88 of the Complaint.

89.     Paragraph 89 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 89 of the Complaint.

90.     Paragraph 90 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 90 of the Complaint.

91.     Paragraph 91 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 91 of the Complaint.

92.     Paragraph 92 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 92 of the Complaint.

93.     Paragraph 93, including 93(a) and 93(b) of the Complaint contain legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 93 including 93(a) and 93(b) of the Complaint. Defendant denies that Plaintiff is entitled to the relief set forth in the unnumbered paragraph following paragraph 93, or any relief whatsoever.

## SECOND CLAIM FOR RELIEF
### TEMPORARY AND PERMANENT INJUNCTIONS

94.     Defendant incorporates its responses in the foregoing paragraphs as if fully set forth herein.

95.     Paragraph 95 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 95 of the Complaint.

96.     Paragraph 96 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 96 of the Complaint. Defendant denies that Plaintiff is entitled to the relief set forth in the unnumbered paragraph following paragraph 96, or any relief whatsoever.

11

## THIRD CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS OR EXPECTANCIES

97.    Defendant incorporates its responses in the foregoing paragraphs as if fully set forth herein.

98.    Paragraph 98 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 98 of the Complaint.

99.    Defendant denies the allegations in paragraph 99 of the Complaint.

100.    Defendant denies the allegations in paragraph 100 of the Complaint.

101.    Paragraph 101 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 101 of the Complaint.

102.    Paragraph 102 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 102 of the Complaint.

103.    Paragraph 103 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 103 of the Complaint.

104.    Paragraph 104 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 104 of the Complaint. Defendant denies that Plaintiff is entitled to the relief set forth in the unnumbered paragraph following paragraph 104, or any relief whatsoever.

12

## FOURTH CLAIM FOR RELIEF
### VIOLATIONS OF THE NEBRASKA WAGE PAYMENT AND COLLECTION ACT

105.    Defendant incorporates its responses in the foregoing paragraphs as if fully set forth herein.

106.    Defendant denies the allegations in paragraph 106 of the Complaint.

107.    Defendant denies the allegations in paragraph 107 of the Complaint.

108.    Defendant admits the allegations in paragraph 108 of the Complaint.

109.    Defendant denies the allegations in paragraph 109 of the Complaint.

110.    Defendant denies the allegations in paragraph 110 of the Complaint.

111.    Paragraph 111 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 111 of the Complaint.

112.    Paragraph 112 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 112 of the Complaint.

113.    Paragraph 113 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 113 of the Complaint.

114.    Paragraph 114 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 114 of the Complaint.

115.   Paragraph 115 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 115 of the Complaint.

116.   Paragraph 116 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 116 of the Complaint.

117.    Paragraph 117 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 117 of the Complaint.

118.   Paragraph 118 of the Complaint contains legal conclusions to which no response is required or made. To the extent a response is required, Defendant denies the allegations in paragraph 118 of the Complaint. Defendant denies that Plaintiff is entitled to the relief set forth in the unnumbered paragraph following paragraph 118, or any relief whatsoever.

**<u>AFFIRMATIVE DEFENSES</u>**

1.   The Complaint fails to state a claim upon which relief can be granted and fails to alleged sufficient facts necessary to state a claim.

2.   Plaintiff seeks an advisory opinion which is improper for a declaratory judgment action.

3.   Plaintiff is barred from seeking the requested relief under the doctrine of unclean hands.

4.   Plaintiff's own acts or omissions caused or contributed to any damages she claims.

5.   Plaintiff has failed to mitigate her damages, if any.

14

6.      Defendant intends to rely on any other defenses that may become available, appear during, or are the result of further action in this matter, and hereby reserves its right to amend this Answer to assert such defenses.

WHEREFORE, Defendant respectfully requests that the Court: (1) enter judgment in its favor; (2) dismiss the Complaint with prejudice and on the merits; (3) enter an order granting to the Defendant its attorneys' fees, costs, and expenses incurred defending this action, as well as other relief deemed just and equitable under the circumstances.

DATED: February 7, 2024.

> NAVSAV HOLDINGS, LLC,
> Defendant,
>
> */s/Kenneth M. Wentz III*
> Kenneth M. Wentz III # 23580
> Quinn R. Eaton # 26318
> Ross M. Serena # 27483
> JACKSON LEWIS P.C.
> 10050 Regency Circle, Suite 400
> Omaha, Nebraska  68114
> (402) 391-1991
> Kenneth.Wentz@jacksonlewis.com
> Quinn.Eaton@jacksonlewis.com
> Ross.Serena@jacksonlewis.com
> **ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which sent notification to all parties of record.

> */s/Kenneth M. Wentz III*

4862-1135-7345, v. 2

15