# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-2965

_____

Austin Michael Beber

*Plaintiff - Appellee*

v.

NavSav Holdings, LLC

*Defendant - Appellant*

_____

No. 23-2966

_____

Cody Roach

*Plaintiff - Appellee*

v.

NavSav Holdings, LLC

*Defendant - Appellant*

_____

No. 23-2967

_____

Jackie Damon

*Plaintiff - Appellee*

Appellate Case: 23-2966     Page: 1     Date Filed: 06/06/2025 Entry ID: 5524348

v.

NavSav Holdings, LLC

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: March 27, 2025
Filed: June 6, 2025
_____

Before SMITH, KELLY, and KOBES, Circuit Judges.
_____

SMITH, Circuit Judge.

In these three interlocutory appeals, an employer and three former employees dispute the enforceability of noncompete and nonsolicitation covenants that the employees signed before resigning. The employer argues that Texas law controls and that the covenants are enforceable. The employees argue that Nebraska law controls and that the covenants are unenforceable. Applying Nebraska law in all three cases, the district court issued antisuit and preliminary injunctions in favor of the employees. For the reasons we will discuss, we vacate the district court's orders granting preliminary injunctive relief to Beber, Roach, and Damon and remand for further proceedings consistent with this opinion.

I. *Background*

In 2022, the Texas insurance company NavSav Holdings, LLC (NavSav) acquired the Nebraska insurance company Universal Group, Ltd. (Universal). After the acquisition, NavSav renegotiated employment terms with Universal's employees. Employees who chose to stay at the company were required to sign three

-2-

Appellate Case: 23-2966    Page: 2    Date Filed: 06/06/2025 Entry ID: 5524348

covenants that would apply after their employment ceased: (1) a covenant not to compete with NavSav, (2) a covenant not to solicit NavSav's customers, and (3) a covenant not to solicit NavSav's employees. The covenants had choice-of-law and forum-selection clauses, which chose Texas law and selected the state court in Jefferson County, Texas, where NavSav is headquartered.

On June 16, 2023, employees Austin Michael Beber, Cody Roach, and Jackie Damon, who had signed the covenants, resigned from NavSav's office in Omaha, Nebraska, and joined the rival insurance company UNICO Group, Inc. (UNICO) in Lincoln, Nebraska. When Beber, Roach, and Damon switched companies, they took customers with them. NavSav alleges that the customers are worth about $510,000 in insurance premiums, paid annually.

Multiple actions soon commenced, both opposing and supporting the noncompete and nonsolicitation covenants. On June 23, 2023, Beber sued NavSav in Nebraska state court. Beber sought declaratory and injunctive relief. He argued that Nebraska law controls and that the covenants are consequently unenforceable. On June 26, 2023, NavSav sued Beber, Roach, Damon, and UNICO in Texas state court. NavSav argued that Texas law controls, and it sought injunctive relief and damages on several claims, including breach of contract, tortious interference, and misappropriation of trade secrets. On June 30, 2023, Roach sued NavSav in Nebraska state court. Roach sought declaratory and injunctive relief. He argued that Nebraska law controls and that the covenants are unenforceable. On July 7, 2023, Damon sued NavSav in Nebraska state court. Damon sought declaratory and injunctive relief. She argued that Nebraska law controls and that the covenants are unenforceable. The Nebraska cases were removed to the United States District Court for the District of Nebraska, and the Texas case was removed to the United States District Court for the Eastern District of Texas.

The federal district court in Nebraska exercised jurisdiction in the Nebraska cases. Applying Nebraska law, the court granted antisuit and preliminary injunctions in Beber's, Roach's, and Damon's favor. The preliminary injunctions forbid NavSav

-3-

(1) "[f]rom making any further submissions, filings, or appearances in the [Texas] case," and (2) "[f]rom taking any action to enforce the noncompetition and non-solicitation covenants" against Beber, Roach, and Damon. Beber R. Doc. 26, at 4; Roach R. Doc. 27, at 4; Damon R. Doc. 22, at 4.

## II. *Discussion*

On appeal, NavSav argues that the federal district court in Nebraska erred in preliminarily enjoining NavSav (1) from litigating its Texas case, and (2) from trying to enforce its covenants against Beber, Roach, and Damon. Having jurisdiction under 28 U.S.C. §§ 1292(a)(1) and 1332(a)(1),[1] we review the injunctions for an abuse of discretion. *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993) (antisuit injunctions); *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 & n.8 (8th Cir. 1981) (en banc) (preliminary injunctions).

## A. *Antisuit Injunction*

To the extent that the preliminary injunctions prohibit NavSav from litigating in Texas, they are antisuit injunctions. "An antisuit injunction is a legal order barring litigants from instituting or prosecuting the same or a similar action in another state." John Ray Phillips, III, *A Proposed Solution to the Puzzle of Antisuit Injunctions*, 69 U. Chi. L. Rev. 2007, 2009 (2002). In the domestic context,[2] "[t]he discretionary power of the federal court in which the first-filed action is pending to enjoin the

---

[1]For diversity jurisdiction purposes, Beber and Roach are Nebraska citizens, Damon (who mainly works from home) is an Iowa citizen, and NavSav has dual citizenship in Texas and Tennessee. *See GMAC Com. Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004) ("[A]n LLC's citizenship is that of its members for diversity jurisdiction purposes . . . ."); R. Doc. 1, at 2 ("[NavSav's] members consist of two Texas [LLCs], the respective members of which are residents of Texas and Tennessee . . . ." (same language in all three records)).

[2]We do not address foreign antisuit injunctions in this opinion. When there are dueling suits in domestic and foreign courts, we apply the "conservative approach" described in *Goss International Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 359–61 (8th Cir. 2007).

-4-

parties from proceeding with a later-filed action in another federal court is firmly established." *Nw. Airlines*, 989 F.2d at 1004. Antisuit injunctions "further[] the general federal policy against multiplicity of litigation embodied in [Federal Rule of Civil Procedure 13(a)]." *Id.* (second alteration in original) (quoting 6 Charles A. Wright, et al., *Federal Practice and Procedure* § 1418, at 145–46 (2d ed. 1990)).

In the present case, the district court applied "the *Dataphase* standards for injunction relief" in issuing the antisuit injunctions. *Id.*; *see also Dataphase*, 640 F.2d at 113 ("Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."). But "orders enjoining a party from proceeding with a duplicative, second-filed lawsuit in another forum, *are not subject to the* Dataphase *standards for injunctive relief.*" *Nw. Airlines*, 989 F.2d at 1004 (emphasis added). As we have explained,

> the *Dataphase* factors are inapposite, since the question has nothing to do with the merits of the underlying controversy and is simply whether, as between two courts both having jurisdiction over the parties and the subject matter of the dispute, the court in which jurisdiction first attached should proceed to adjudicate the controversy and should restrain the parties from proceeding with the later-file action.

*Id.*

Instead of applying the *Dataphase* factors, a district court should apply the "well-established" first-filed rule in assessing whether to grant an antisuit injunction. *Id.* at 1005. This rule provides that

> in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann*,

-5-

Appellate Case: 23-2966     Page: 5     Date Filed: 06/06/2025 Entry ID: 5524348

765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982), the first-filed rule should apply.

*Id.* (quoting *United States Fire Insurance Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488–89 (8th Cir. 1990). For example, "[i]n determining whether compelling circumstances exist, . . . one equitable consideration is whether the action was filed in apparent anticipation of the other pending proceeding." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (cleaned up). This is a factual finding that the district court makes. *See id.* But even if the district court makes such a finding, it "still remains one equitable factor among many that a district court can consider in determining whether" to grant an antisuit injunction. *Id.*; *cf. Orthmann*, 765 F.3d at 121 ("We conclude that the federal comity doctrine is best served in this case by dismissing Orthmann's action in Minnesota district court. Although he filed his action first in Minnesota, the decision by the Seventh Circuit means that the controversy is now further developed in the Wisconsin district court.").

Because the district court applied the improper legal standard, we vacate the antisuit injunctions and remand to the district court for application of the first-filed rule analysis. In conducting this analysis, the district court should make any necessary factual findings and may consider any arguments the parties raise in favor of or against application of the first-filed rule.[3]

---

[3]We also note that during the pendency of this appeal, the procedural posture of the Texas litigation has changed: the Eastern District of Texas remanded its case to Texas state court. *See NavSav Holdings, LLC v. Beber*, 724 F. Supp. 615, 636 (E.D. Tex. 2024). The district court is best suited to evaluate what effect, if any, this remand has on the first-filed rule analysis. *See Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 687 (8th Cir. 2002).

Appellate Case: 23-2966     Page: 6     Date Filed: 06/06/2025 Entry ID: 5524348

## B. *Preliminary Injunctions*

In these three cases, the district court also issued preliminary injunctions that forbid NavSav from trying to enforce the covenants that Beber, Roach, and Damon signed.[4] "A preliminary injunction is an extraordinary remedy never awarded as of right." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342 (8th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "When determining whether a preliminary injunction should issue," a court must consider four factors: "'(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.'" *Ng v. Bd. of Regents of the Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023) (quoting *Dataphase*, 640 F.2d at 114); *see also Winter*, 555 U.S. at 20 (same factors).

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Bricker*, 103 F.4th at 1346 (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). "To demonstrate irreparable harm, the

---

Additionally, we reject NavSav's suggestion that the district court lacked jurisdiction to enjoin NavSav because the district court is in Nebraska while NavSav is in Texas. *See* Appellant's Br. at 16 ("[T]he District Court does not have jurisdiction to issue an injunction on the parties in a different venue."). At least between the parties in a case (as contrasted with non-parties), longstanding Supreme Court precedent holds that a district court may exercise its equity powers regardless of the parties' locations. *See, e.g.*, *Steele v. Bulova Watch Co.*, 344 U.S. 280, 289 (1952) ("[T]he District Court in exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction."); *Massie v. Watts*, 10 U.S. (6 Cranch) 148, 158 (1810) ("[T]he principles of equity give a court jurisdiction wherever the person may be found . . . .").

[4]The district court enjoined NavSav from trying to enforce both its own covenants and earlier covenants that Beber, Roach, and Damon signed when they worked for Universal. Here, we address both sets of covenants together. We offer no opinion on whether NavSav assumed Universal's covenants in its acquisition.

-7-

Appellate Case: 23-2966     Page: 7     Date Filed: 06/06/2025 Entry ID: 5524348

movant must show harm that is certain and great and of such imminence that there is a clear and present need for equitable relief." *Id.* (brackets omitted) (quoting *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 951 (8th Cir. 2023)). "Economic loss, on its own, is not an irreparable [harm] so long as the losses can be recovered." *Wildhawk Invs., LLC v. Brava I.P., LLC*, 27 F.4th 587, 597 (8th Cir. 2022) (quoting *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013)). "[F]ailure of a movant to show irreparable harm is an 'independently sufficient basis upon which to deny a preliminary injunction.'" *Padda v. Becerra*, 37 F.4th 1376, 1384 (8th Cir. 2022) (alteration in original) (quoting *Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021)).

Here, the district court concluded that irreparable harm will occur if NavSav tries to enforce the noncompete and nonsolicitation covenants against Beber, Roach, and Damon. In Beber's and Roach's cases, the court said:

> The Court does not find that the economic injuries to Beber and Roach from loss of income, impairment of their ability to earn a living, and the costs of litigation, are "irreparable harms," because they can be recompensed by money damages. Nevertheless, the Court finds that [Beber and Roach] have shown irreparable harm sufficient to warrant injunctive relief where Nebraska has a clear public policy against overbroad restrictive covenants in employment contracts as restraints on trade and will not reform them to impose only reasonable limitations, and *that policy will be irreparably harmed by enforcement of the restrictive covenants*.

*Beber v. NavSav Holdings, LLC*, Nos. 8:23-CV-323 & -325, 2023 WL 5402599, at *2 (D. Neb. Aug. 22, 2023) (citations omitted and emphasis added).

Appellate Case: 23-2966     Page: 8     Date Filed: 06/06/2025 Entry ID: 5524348

Similarly, in Damon's case, the court said:

> The Court does not find that the economic injuries to Damon from loss of income, impairment of her ability to earn a living, and the costs of litigation, are "irreparable harms," because they can be recompensed by money damages. Nevertheless, the Court finds that Damon has shown irreparable harm sufficient to warrant injunctive relief where Nebraska has a clear public policy against overbroad restrictive covenants in employment contracts as restraints on trade and will not reform them to impose only reasonable limitations, and *that policy will be irreparably harmed by enforcement of the restrictive covenants*.

*Damon v. NavSav Holdings, LLC*, No. 8:23-CV-351, 2023 WL 5508867, at *2 (D. Neb. Aug. 25, 2023) (citations omitted and emphasis added).

The district court acknowledged that no binding authority supports its conclusions that harm to a state public policy counts as an irreparable harm. Nevertheless, it predicted that if such a case ever reached the Nebraska Supreme Court, that court would so decide. *See Beber v. NavSav Holdings, LLC*, Nos. 8:23-CV-323 & -325, 2023 WL 5412612, at *20 (D. Neb. Aug. 22, 2023) ("Although [Beber and Roach] have not cited any Nebraska case that has granted a preliminary injunction on the ground that a restrictive covenant would inflict irreparable harm because it would violate Nebraska public policy, this Court predicts that the Nebraska Supreme Court would not hesitate to do so when this aspect of Nebraska public policy is so well-established."); *Damon v. NavSav Holdings, LLC*, No. 8:23-CV-351, 2023 WL 5512143, at *21 (D. Neb. Aug. 25, 2023) ("Although Damon has not cited any Nebraska case that has granted a preliminary injunction on the ground that a restrictive covenant would inflict irreparable harm because it would violate Nebraska public policy, this Court predicts that the Nebraska Supreme Court would not hesitate to do so when this aspect of Nebraska public policy is so well-established.").

Appellate Case: 23-2966     Page: 9     Date Filed: 06/06/2025 Entry ID: 5524348

We find two errors in the district court's analysis. First, a federal district court applies a federal standard, not a state standard, when it decides to grant or refuse a preliminary injunction. *See Schuler v. Adams*, 27 F.4th 1203, 1209 (6th Cir. 2022) (noting that federal courts apply a federal preliminary injunction standard and that state courts apply their own state standards); *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010) (Gorsuch, J.) ("[F]ederal law governs the procedural questions [of] when a preliminary injunction may issue and what standards of review we apply . . . ."); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 799 (3d Cir. 1989) ("Rule 65(a) of the Federal Rules of Civil Procedure contemplates a federal standard as governing requests addressed to federal courts for preliminary injunctions." (quoting *Sys. Operations, Inc. v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1141 (3d Cir. 1977))). Although the federal standard for preliminary injunctive relief often requires a federal court to examine state law—for example, when the court considers a state-law claim's likelihood of success on the merits—the standard itself remains federal. *See Winter*, 555 U.S. at 20 (listing a single set of factors that does not vary from state to state); *Dataphase*, 640 F.2d at 114 (same). Determining whether irreparable harm exists is not a prediction about what a state court would decide. A federal court "look[s] to federal law to determine whether a [movant] has made such a showing." *Potlongo v. Herff Jones, LLC*, 749 F. App'x 537, 537 (9th Cir. 2018) (unpublished memorandum opinion). In other words, the existence of irreparable harm is a question of federal law. *Id.* "[F]ederal law dictates not only that the movant must show irreparable harm, but also dictates how that factor is *applied*—in particular, what a litigant must show to establish 'irreparable harm.' And that is true whether the underlying claim arises under federal or state law." *Moeschler v. Honkamp Krueger Fin. Servs., Inc.*, No. 21-CV-0416, 2021 WL 4273481, at *10 (D. Minn. Sept. 21, 2021).

Second, the district court's orders in these cases misconstrue the meaning of "irreparable harm" under federal law. The proper inquiry is not whether enforcement of the covenants would irreparably harm Nebraska public policy. Instead, the issue is whether enforcement of the covenants would irreparably harm the individual movants—Beber, Roach, and Damon. When a preliminary injunction is sought, a

-10-

federal court must consider "the threat of irreparable harm *to the movant*," *Dataphase*, 640 F.2d at 114 (emphasis added), or whether *the movant* "is likely to suffer irreparable harm in the absence of preliminary relief," *Winter*, 555 U.S. at 20. Nebraska was not the movant in these cases. Beber, Roach, and Damon were the movants. Considering potential harm to Nebraska public policy conflates the irreparable-harm factor and the public-interest factor. *See Winter*, 555 U.S. at 20 (identifying these as distinct factors); *Dataphase*, 640 F.2d at 114 (same). The irreparable-harm factor is about the individual interests of each movant. The public-interest factor is about the good of society as a whole. Both factors are components of the preliminary injunction test, but they are not interchangeable.

Once the district court determined that Beber's, Roach's, and Damon's potential harms were purely economic, compensable by NavSav, and therefore not irreparable,[5] the *Dataphase* or *Winter* analysis was complete. Preliminary injunctive relief was foreclosed. *See Wildhawk*, 27 F.4th at 597 (holding that purely economic harms are not irreparable if the movants can recover their losses by money damages). The court's consideration of potential harm to Nebraska public policy, in its analysis of the irreparable-harm factor, was an abuse of discretion. *See H&R Block*, 58 F.4th at 951 ("[A] district court abuses its discretion when its decision is based on 'any clear error on an issue of law that may have affected the ultimate balancing of the factors considered for a preliminary injunction[.]'" (quoting *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999))).

Because no irreparable harm will personally befall Beber, Roach, or Damon, we do not reach the remaining factors. *See Morehouse Enters., LLC v. ATF*, 78 F.4th 1011, 1016–17 (8th Cir. 2023). "The absence of irreparable harm is sufficient grounds for vacating a preliminary injunction." *Loc. Union No. 884, United Rubber,*

---

[5]*See Beber*, 2023 WL 5402599, at *2 (not finding irreparable harm to Beber and Roach); *Damon*, 2023 WL 5508867, at *2 (not finding irreparable harm to Damon).

-11-

*Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1355 (8th Cir. 1995) (internal quotation marks omitted).

But the unavailability of preliminary injunctive relief does not necessarily forestall all judicial relief. Typically, a former employee who wishes to test the validity of a covenant, without first violating it and waiting to see what happens, brings a declaratory judgment action. *See, e.g.*, *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1013 (8th Cir. 2021). A declaratory judgment is a suitable remedy for resolving an actual case or controversy between adverse parties, though irreparable harm is absent. *See Nashville, Chattanooga & St. Louis Ry. v. Wallace*, 288 U.S. 249, 264 (1933) (explaining that "allegations of threatened irreparable injury" are unnecessary in declaratory judgment actions); Douglas Laycock, *The Death of the Irreparable Injury Rule*, 103 Harv. L. Rev. 687, 722 (1990) ("[A] court may escape the [irreparable injury] rule by giving a declaratory judgment instead of an injunction."). If the covenants here are unenforceable under applicable state law, a declaratory judgment would be an adequate remedy for resolving Beber's action against NavSav. *See* 28 U.S.C. § 2201(a); Fed. R. Civ. P. 57 & advisory committee's notes; *see generally* Samuel L. Bray, *The Myth of the Mild Declaratory Judgment*, 63 Duke L.J. 1091 (2014) (explaining that a declaratory judgment is appropriate when the parties simply need an authoritative and binding declaration of their rights and duties and "when heightened management of the parties is unnecessary").

In Beber's case, where the district court is the first-filed court, Beber prayed for declaratory relief. *See Beber*, 2023 WL 5412612, at *7 ("In his Complaint, Beber's first claim for relief is for [a] declaratory judgment that . . . [NavSav's] covenants[] are invalid and unenforceable under Nebraska law, which Beber asserts applies."). The court did not address this prayer. On remand, the court retains its discretion to consider this prayer in the first instance. *See Sanzone v. Mercy Health*, 954 F.3d 1031, 1047 (8th Cir. 2020) ("When a district court fails to address a matter properly presented to it, we ordinarily remand to give the court an opportunity to rule in the first instance." (quoting *GEICO Cas. Co. v. Isaacson*, 932 F.3d 721, 724 (8th Cir. 2019))); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict

-12-

courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act . . . ."); *see also Alsager v. Dist. Ct. of Polk Cnty.*, 518 F.2d 1160, 1163–64 (8th Cir. 1975) (holding that the "principal criteria" for granting declaratory relief "are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings" (quoting Edwin Borchard, Declaratory Judgments 299 (2d ed. 1941))); *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 998–99 (8th Cir. 2005) (identifying four additional factors that may be relevant in some cases).[6]

## C. *Forum-Selection Clauses*

NavSav further contends that venue is improper and that, pursuant to the covenants' forum-selection clauses, the district court should have dismissed all three cases or else transferred them to the United States District Court for the Eastern District of Texas. *See* Appellant's Br. at 20–21 (citing 28 U.S.C. § 1406(a)). Motions seeking the enforcement of contractual forum-selection clauses, such as a motion to dismiss or a motion to transfer, are not appealable on an interlocutory basis. *See Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 496 (1989). Accordingly, we dismiss this portion of NavSav's appeals for want of jurisdiction. *See Fischer v. First Nat'l Bank of Omaha*, 466 F.2d 511, 511–12 (8th Cir. 1972) (per curiam).

---

[6]Because we vacate the district court's preliminary injunctions for lack of irreparable harm and because the district court issued no declaratory judgment, we do not reach the choice-of-law issues that were briefed. Although we disfavor "piecemeal appeals," *In re Mun. Stormwater Pond Coordinated Litig.*, 73 F.4th 975, 979 (8th Cir. 2023), any opinion on the choice-of-law issues would be premature and advisory at this stage, *see Doe v. S. Iron R-1 Sch. Dist.*, 498 F.3d 878, 884 (8th Cir. 2007) ("[O]ur limited jurisdiction to review an interlocutory order granting a preliminary injunction does not extend to rendering advisory opinions on the merits of issues that may need to be decided later in the litigation.").

-13-

## III. *Conclusion*

For the foregoing reasons, we vacate the district court's orders granting preliminary injunctive relief to Beber, Roach, and Damon and remand for further proceedings consistent with this opinion. We dismiss the forum-selection-clause portion of NavSav's appeals for want of jurisdiction.

———————————————

-14-